**PUGH v. LINDSAY et al.**

No. 6587.

United States Court of Appeals
Fourth Circuit.

Argued June 9, 1953.

Decided July 11, 1953.

John T. Camblos, Charlottesville, Va. (Michie, Camblos & Via, Charlottesville, Va., on the brief), for appellant.

Robert E. Taylor, Charlottesville, Va. (E. H. Deets, Jr., Charlottesville, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Western District of Virginia dismissing plaintiff's action to recover overtime compensation under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219. The plaintiff sought overtime pay in the amount of $709.69, a like amount as liquidated damages, and reasonable attorney's fees.

The defendants are the owners and publishers of The Daily Progress, a daily newspaper published in the City of Charlottesville, Virginia. In May, 1948, the plaintiff was employed by the defendants to work in the mechanical department of the newspaper as an advertisement make-up man or as a linotype operator. After a few months the plaintiff was made foreman of the composing room, where the type is set by the linotype machines and the advertisements and the pages are made up. At this time plaintiff was put on a weekly salary. During the summer of 1949 the plaintiff was put in charge of all of the mechanical department of the paper and given the title of Mechanical Superintendent.

In the capacity of Mechanical Superintendent, the plaintiff was in charge of the composing room, the engraving department and the press room. There was no specific regulation of his working day, but his job was to see that the mechanical department completed its function so that the paper went to press on time.

In addition to his regular work, the plaintiff performed two special jobs for the defendants during 1950. The first of these

was helping to move all of the equipment in the stereotype room to a new location, which undertaking required seventeen to eighteen hours of plaintiff's time. The second of these special jobs occurred when the City of Charlottesville changed over from manufactured gas to natural gas and it became necessary to change the burners in some of the equipment in the mechanical department. This job required ten and one-half hours of plaintiff's time. In the former case, the plaintiff assisted in the actual labor of moving, as well as supervising the operation; in the latter case he was present because the work was performed by strangers, and it was necessary for someone to be on hand to let them into the building, show them where the equipment was and lock up after their departure.

Sometime during the fall of 1950, the plaintiff was told by a fellow employee that a linotype operator was receiving more pay than he was, though working fewer hours, and he became dissatisfied when told by the Business Manager that this was none of his affair. He then wrote to the Wage and Hour Division for information concerning the Fair Labor Standards Act and from its reply he determined that he was entitled to overtime pay for his working time in excess of forty hours per week. On January 4, 1951, the plaintiff had a conference with the Business Manager and the publisher concerning his working hours and pay. At this conference the plaintiff stated he thought that the defendants were in violation of the Fair Labor Standards Act but said that if some satisfactory arrangement could be made he would not insist upon his rights under the Act. Some time later, the plaintiff again talked to the publisher and when he had received no satisfaction as to his complaints two weeks later, resigned on February 9, 1951.

Thereafter, the plaintiff made complaint to the Wage and Hour Division which, after investigation, determined that the plaintiff was entitled to overtime wages. Subsequently defendants' attorney tendered a check to plaintiff as payment for overtime, in accordance with the findings of the Wage and Hour Division. The plaintiff, believing himself entitled to a larger sum, refused to accept the check, and after several months of unfruitful negotiation, brought this action.

Defendants contended that the plaintiff was employed in a supervisory and executive capacity and was, therefore, exempt from the operation of the statute. In addition to a general denial of any indebtedness to the plaintiff for overtime wages, the defendants invoked the statute of limitations as to that part of plaintiff's claim which related to employment prior to January 3, 1950.

Prior to the trial of this case, it was stipulated between counsel that the statute of limitations bars any recovery in this case for work done prior to January 1, 1950; that the weekly wage of plaintiff during 1950 was $80.00 per week and during the portion of 1951 which plaintiff worked for the defendants it was $82.50 per week; that the plaintiff worked for defendants 51 weeks during 1950 and 5½ weeks during 1951.

The pertinent section of the Fair Labor Standards Act of 1938, as amended, 29 U. S.C.A. § 213 (a) (1) provides:

"Sec. 213 Exemptions

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator)".

The Administrator has defined and delimited the term "employed in a bona fide executive capacity" as follows, 29 Code Fed.Regs.Section 541.1:

"The term 'employee employed in a bona fide executive * * * capacity in section 13(a) (1) of the act shall mean any employee—

"(a) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or sub-division thereof; and

"(b) who customarily and regularly directs the work of two or more other employees therein; and

"(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) who customarily and regularly exercises discretionary powers; and

"(e) who does not devote more than 20 per cent of his hours worked in the work week to activities which are not directly and closely related to the performance of the work described in paragraph (a) through paragraph (d) of this section: Provided, That this paragraph (e) shall not apply in the case of an employee who is in sole charge of an independent establishment, or who owns at least a 20 per cent interest in the enterprise in which he is employed; and

"(f) who is compensated for his services on a salary basis at a rate of not less than $55 per week (or $30 per week if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities:

"Provided, That an employee who is compensated on a salary basis at a rate of not less than $100 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or sub-division thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section."

The case was tried without a jury on December 8, 1952. At the conclusion of the evidence, the court dismissed the complaint on the grounds that the evidence was insufficient to establish that the plaintiff devoted more than twenty per cent of his work hours to non-exempt work and that there was no evidence from which the amount due the plaintiff (if any) could be calculated.

It is not disputed that plaintiff is disqualified from invoking the provisions of the Act on the ground that he was an executive employee under most of the criteria established in the regulation. Plaintiff does not deny that, during the period here involved, he held a supervisory position of importance and responsibility. Charged with the management of the linotype, advertisement, make-up and press room departments, he had under his control some 18 to 20 employees. He constructed time schedules governing the working hours of these employees, fixed their duties, promulgated rules regarding visitation, and possessed the authority to hire and discharge personnel in the mechanical department. He was under no duty to perform the work of the employees he supervised. It does not appear that any attempt was made to control the plaintiff in execution of his duties, and he was under no restriction or agreement as to the amount of time to be devoted to his work. As the District Judge declared, he was "the master of his own time."

The sole point of importance in the instant controversy is centered around the question of whether or not the plaintiff devoted more than 20 per cent of his hours in the workweek to non-exempt activities as prescribed by subsection (e) of the regulation. Regarding the burden of proof on this issue, the District Judge observed:

"In this case, as in other civil actions, the burden rests on the plaintiff to prove his case. In the instant case this would require that the plaintiff establish with at least reasonable certainty that he worked at mechanical tasks a sufficient number of hours to remove him from the executive class, and the periods during which this occurred."

Plaintiff contends that this declaration improperly states the applicable law, and that the burden is upon the defendants, who seek to establish the exemption, to show that plaintiff did not devote more than 20 per cent of his time to non-exempt activity.

A review of the decisions reveals that the plaintiff's position in this respect seems to be well taken. Since the Act is remedial in nature, the exemptions contained therein must be strictly construed, and it is incumbent upon one asserting an exemption to bring himself clearly and unmistakably within the spirit and the letter of its terms. A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 498, 65 S.Ct. 807, 89 L. Ed. 1095, 157 A.L.R. 876; Armstrong Co. v. Walling, 1 Cir., 161 F.2d 515; Smith v. Porter, 8 Cir., 143 F.2d 292; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52. Thus, as defendants concede on this appeal, the burden of proving that an employee is retained in an executive capacity and is therefore exempt from the provisions of the Act rests upon the employer. Notwithstanding, defendants insist that their concession regarding the burden of proof does not dictate a reversal of the lower court's judgment, since it is clear from the evidence of record that this burden has been met.

It is well settled that the question of executive exemption is a factual one, to be resolved by a consideration of the circumstances shown in the record of the individual case. Fletcher v. Grinnell Bros., 6 Cir., 150 F.2d 337; Fanelli v. United States Gypsum Co., 2 Cir., 141 F.2d 216. The only evidence to support the plaintiff's contention that 20 per cent of his time was spent in activities which were not directly and closely related to his managerial duties was the plaintiff's own estimate that "possibly 60 per cent" of his time was spent in mechanical work. No records were kept of the hours that plaintiff worked and plaintiff admitted that the calculation was difficult to make. This statement was not supported by any other evidence.

Although the Mechanical Department was composed of four subdivisions, the plaintiff made no specific claim of having assisted in the work of the make-up and press divisions. His claim is confined to the performance of mechanical tasks in the composing room and, particularly, in the operation of a linotype machine. However, the supervisor of the defendants' advertising department testified that plaintiff assisted in that department "very, very little," not more than a few hours during the entire period involved. The foreman of the linotype department testified that, although plaintiff did operate a linotype machine when other employees were absent, he did not think that such work exceeded 20 per cent of plaintiff's time. Moreover, it appears that a part-time linotype operator was employed by defendants to assist during vacation periods and at other times when regular operators were absent.

It is apparent from the record that plaintiff's mechanical tasks were performed on a purely voluntary basis or in occasional emergency situations. On the whole, we are satisfied that the defendants' evidence on this issue, supplemented by the related evidence regarding the managerial aspects of plaintiff's position, was sufficient to discharge the requirements of the regulation, and justified the finding of the District Court that plaintiff was employed in an executive capacity and thus exempt from the provisions of the Act. See McReynolds v. Pocahontas Corp., 4 Cir., 192 F.2d 301; Laudadio v. White Const. Co., 2 Cir., 163 F.2d 383. We quote a pertinent paragraph from the opinion of the District Judge:

"One matter should be mentioned as bearing upon the good faith and genuineness of plaintiff's claim. The plaintiff is not an ignorant man unacquainted with his legal rights. On the contrary he is highly intelligent and according to his own testimony was well acquainted with the provisions of the Wage and Hour Act, due in part to the fact that he had previously worked in a plant in New Jersey where the provisions of the Act as to overtime had been the source of discussion and trouble. Nevertheless, from the time when plaintiff was first given a supervisory position he never even suggested to his employers that he was working overtime or was eligible for overtime pay, until in January, 1951, when he brought up the question of an increase in salary. Even then his claim to overtime was used only as a threat to force an increase in his salary, and

was accompanied by a statement of his willingness to forego any claim under the Wage and Hour Act if his salary demands were acceded to."

This conclusion makes it unnecessary to consider the subsidiary questions relating to the calculation of plaintiff's actual damages and his right to a penalty in the form of liquidated damages. The judgment of the District Court is, accordingly, affirmed.

Affirmed.