**Gary NETTLES, Plaintiff,**

v.

**TECHPLAN CORPORATION and TDS Incorporated, Defendant.**

**Civ. A. No. 2:87–3056–1.**

United States District Court,
D. South Carolina,
Charleston Division.

Sept. 15, 1988.

C. Steven Moskos, Charleston, S.C., for plaintiff.

Allan R. Holmes, Charleston, S.C., for defendant.

## ORDER

HAWKINS, District Judge.

Gary Nettles began working for TDS Incorporated (TDS)[1] in 1978. He continued to work for TDS with only minor interruptions until he was fired on June 29, 1987. Plaintiff subsequently filed a complaint alleging four causes of action all stemming from his June 29, 1987 termination. Plaintiff bases his claims on *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987) and on the Fair Labor Standards Act, 29 U.S.C. §§ 202–208, 210, 212–214 and 216.

---

**1.** TDS is apparently a wholly-owned subsidiary of Techplan Corporation.

This matter is before the court on the defendants' motion for summary judgment. The issue in determining a motion for summary judgment is whether there exists a genuine issue of material fact. Fed.R. Civ.P. 56.

Of course a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon the bald assertion of his pleadings. Fed.R.Civ.P. 56(e); *see Celotex,* 477 U.S. 317, 106 S.Ct. 2548.

Thus,

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element of that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553.

## I. *Plaintiff's contractually based claims*

Plaintiff's first two causes of action, breach of an employment agreement and breach of the covenant of good faith and fair dealing of the same agreement, are grounded on the recent decision of the South Carolina Supreme Court in *Small v. Springs Industries,* 292 S.C. 481, 357 S.E. 2d 452 (1987). In that case, the court held that the issuance of an employee policy manual could alter the otherwise at will employment relationship between the issuing employer and its employees. In so holding, the court made clear that whether or not an employee handbook or policy manual constitutes an employment contract is a question for the jury. *Id.* at 483, 357 S.E.2d at 454.

The court did not hold, however, that all policy manuals create a contractual relationship between the employer and its employees. In fact, the court explicitly stated:

If an employer wishes to issue policies, manuals, or bulletins as purely advisory statements with no intent of being bound by them and with a desire to continue under the employment at will policy, he certainly is free to do so. This could be accomplished merely by inserting a conspicuous disclaimer or provision into the written document.

*Id.* at 485, 357 S.E.2d at 455. It is this portion of the *Small* opinion which is most relevant to the case at bar.

There is no dispute that the Personnel Policy and Practices Manual was in effect at all times relevant, nor is there any dispute that the plaintiff had seen some version of that manual. The manual contains two relevant provisions. The second numbered paragraph on the first page of the manual, page i, states:

This Personnel Policy and Practices Manual does not constitute an employment agreement or contract of employment. Within applicable state and federal laws, both you, the employee, and TDS Incorporated each have the right to terminate your employment at any time for any reason.

Secondly, page 2018–1 of the manual states that employment terminations are of three types: (1) "Voluntary—initiated by the employee," (2) "Lay off—work force reduction," or (3) "Discharge—for cause."

It is this apparent inconsistency on which the plaintiff relies most heavily in asserting that the agreement creates an employment contract between the parties. To evaluate the relevance of the inconsistency, the court must more closely examine the *Small* case. In that case, the employer had issued an employee manual which, *inter alia*, outlined a four-step disciplinary process. In this context, the court found that " 'strong equitable and social policy reasons militat[e] against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice.' " *Small* at 485, 357 S.E.2d at 454 (citation omitted).

In this same context, however, the court indicated that the employer could avoid being bound by the procedures outlined in the handbook simply by including a conspicuous disclaimer in the handbook. Thus, it appears that, if the handbook distributed by the defendant in *Small* had contained a conspicuous disclaimer, it would not have been binding upon the defendant even though it outlined a comparatively extensive four-step disciplinary process. For this reason, the court does not find that the disclaimer in the manual issued in this case combined with the language indicating that the employee can be discharged for cause creates an ambiguity which, as a matter of law, precludes the disclaimer from having its intended effect.

The defendants allege, on the other hand, that the disclaimer contained in the Personnel Policy and Practices Manual issued to the plaintiff was sufficiently conspicuous to defeat any claim that the manual created a contract between TDS and the plaintiff. Alternatively, the defendants argue that the issue of conspicuousness is no longer relevant because, they claim, the plaintiff had actual knowledge of the disclaimer at all times pertinent.

Under the standard annunciated in *Celotex*, this court can grant summary judgment on the plaintiff's breach of contract claim only if it can render one of two decisions as a matter of law. First, if the disclaimer was conspicuous as a matter of law, the plaintiff's first cause of action must fail. Second, if actual knowledge renders the conspicuousness of the disclaimer irrelevant, and the court can find as a matter of law that the plaintiff had actual knowledge of the disclaimer, then, likewise, the court would have to grant summary judgment on the first cause of action.

The disclaimer is located in the second numbered paragraph of the first page, excluding cover pages, of the manual. It is in the same color and print size as the remainder of the manual.

The South Carolina Supreme Court did not define conspicuousness in the *Small* case. The court, therefore, looks to other areas of the law in an attempt to glean a meaningful definition. South Carolina's version of the Uniform Commercial Code (UCC) defines conspicuous as follows:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . .

S.C.CODE ANN. § 36–1–201(10). This statute further provides that the determination of conspicuousness is a matter for decision by the court. Thus, even though the jury would decide if the manual created a contract absent a conspicuous disclaimer, the issue of whether the disclaimer was appropriately conspicuous is, in the first instance, one for the court to decide. If the court should conclude that the disclaimer is not conspicuous, then the jury would be left with the determination of whether the manual in its entirety creates an agreement between the parties.

Although this court realizes that the UCC is not applicable to the case at bar, it looks to that statute and the courts con-

struing it for guidance in determining whether the disclaimer in the manual issued by TDS is conspicuous. South Carolina cases applying the UCC definition of "conspicuous" consistently consider three factors in determining whether a certain disclaimer is or is not conspicuous. First, the courts consider the type-setting of the disclaimer, i.e. if the disclaimer is in the same type as the remainder of the agreement containing the disclaimer. Second, the courts have looked to the color of the print in which the disclaimer is written. Finally, the courts consider the location of the disclaimer within the document or contract.

In *South Carolina Electric & Gas Co. v. Combustion Engineering, Inc.*, 283 S.C. 182, 322 S.E.2d 453 (S.C.App.1984), the court found that a disclaimer, indistinct as to color and type and located on the seventeenth page of a twenty-two page agreement was not conspicuous. In *Investors Premium Corp. v. Burroughs Corp.*, 389 F.Supp. 39 (D.S.C.1974), the court found that a clause set out in a separate paragraph in all capital letters was conspicuous. Finally, in *Cooley v. Salopian Industries, Ltd.*, 383 F.Supp. 1114 (D.S.C.1974) the court found a disclaimer of non-distinct color and type buried in a lengthy paragraph of a conditional sales agreement seven legal pages long was not conspicuous.

■ Unfortunately for this court, none of these cases is directly on point with the case at bar. The disclaimer contained in the manual issued by TDS contrasts in neither type nor color with the remainder of the manual. However, the disclaimer is contained in a separate paragraph on the first page of the manual. Under these circumstances, this court finds that the disclaimer is sufficiently conspicuous such that a reasonable person against whom it is to operate ought to have noticed it. For this reason, the first cause of action, breach of contract, will be dismissed.[2]

The second cause of action alleges breach of the covenant of good faith and fair dealing implied in the employment agreement previously alleged. Obviously, since the court found that the manual did not create a contract, this cause of action must fail.

In his response to the defendants' summary judgment motion, the plaintiff also alleges that he was discharged in violation of public policy. This argument is an apparent attempt by the plaintiff to allege a cause of action for retaliatory discharge. Plaintiff alleges that he was discharged because of comments he made concerning the resume of one of his co-employees whom TDS was considering for a promotion.

In South Carolina, a cause of action exists by which an at will employee may recover damages if he or she is terminated in violation of public policy. *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985). The *Ludwick* case and the cases from other jurisdictions on which the *Ludwick* court relied all involved terminations in retaliation for an employee's refusal to violate the law at the direction of his employer.

■ The plaintiff in the case at bar was concerned that TDS was about to promote his fellow employee to a position for which she was not qualified. He felt that such promotion would violate the contract between the government and TDS. However, the plaintiff admits that the promotion decision was not his to make. Clearly the case at bar is distinguishable from *Ludwick* and the cases cited therein. At no point did TDS ask plaintiff to violate the law. For the above reasons, the second cause of action will also be dismissed.

## II. *Plaintiff's claim for unpaid overtime*

Plaintiff maintained supplemental timesheets during the final months of his employment. These timesheets apparently indicate that the plaintiff worked 128 hours of overtime for which he was not paid. He seeks to recover these wages in his third

---

**2.** Because the definition of "conspicuous" and the cases applying the definition indicate that the conspicuousness test is an objective test, the court will not address the rather complicated, based on this record, question of whether the plaintiff was actually aware of the disclaimer.

cause of action. In his fourth cause of action, he claims that the defendants negligently maintained their own time records and thereby deprived plaintiff of his overtime compensation.

The defendant alleges that the overtime causes of action are governed by the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 202–208, 210, 212–214, 216, and in his response to the defendants' motion, the plaintiff does not dispute that allegation. An employer may not employ an individual engaged in commerce or in the production of goods for commerce for more than forty hours per week unless the employee pays the individual not less than one and one half times the regular rate of pay for overtime hours worked. 29 U.S.C. § 207(a)(1). The defendant claims that this provision does not apply to the plaintiff because he falls within an exception created in 29 U.S.C. § 213(a)(1). That section provides that § 207 does not apply to employees who are employed in a "bona fide executive, administrative, or professional capacity...."

The Department of Labor issued regulations implementing the provisions of the FLSA. Those regulations outline the conditions which must be present for an employee to fall within the administrative employee exemption to § 207. In pertinent part, the regulations provide:

The term "employee employed in a bona fide * * * administrative * * * capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of either:

(1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or

(2) ...; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity ..., or

(2) Who performs under only general supervision work along specialized lines requiring special training, experience, or knowledge, or

(3) Who executes under only general supervision special assignments and tasks; and

(d) Who does not devote more than 20 percent ... of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

(e) Who is compensated for services by a salary or fee basis at a rate of not less than $170 per week....

29 C.F.R. § 541.2.

The determination of whether an employee falls within one of the exceptions outlined in 29 U.S.C. § 213 and in the previously quoted regulation is a question of fact. *Pugh v. Lindsay*, 206 F.2d 43, 46 (4th Cir.1953). Furthermore, an employer seeking to avoid overtime wages based on a § 213 exemption has the burden of proving that the employee falls within the exemption. *Clark v. J.M. Benson, Co.*, 789 F.2d 282 (4th Cir.1986), *Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168 (5th Cir.1983), and *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141 (3rd Cir.1983). The section 213 exemptions are to be strictly construed, and the employer must "bring himself clearly and unmistakably within the spirit and the letter of its terms." *Pugh*, 206 F.2d at 46.

█ The evidence is not disputed that the plaintiff meets the wage requirement of 20 C.F.R. § 541.2, but the evidence concerning the nature of the plaintiff's work is less clear. The plaintiff testified in deposition that he spent as much as eighty percent of his time performing manual labor. James Grego, the TDS executive who fired the plaintiff, testified that he was sure that the plaintiff fell within the exemption. On the record now before it, the court cannot find, however, that the defendants have carried their burden of proving that the plaintiff is exempted from the overtime provisions of the FLSA. For this reason,

summary judgment will not be granted on the plaintiff's third cause of action.

 Plaintiff's fourth cause of action purports to be a negligence cause of action. Clearly, the terms of the FLSA govern the ability of plaintiff to recover overtime wages. Furthermore, the damages sought in this action are identical to those sought in the third cause of action. If plaintiff is eventually determined to be exempt from the provisions of the FLSA, he certainly cannot circumvent the exemption merely by proving negligence on the part of defendants. For these reasons, the court will grant summary judgment on the fourth cause of action. Based on the foregoing, it is

ORDERED, that the defendants' motion for summary judgment be, and the same is hereby, granted with respect to the plaintiff's first, second and fourth causes of action. It is

ORDERED FURTHER, that the defendants' motion for summary judgment be, and the same is hereby, denied with respect to the plaintiff's third cause of action.

AND IT IS SO ORDERED.