**Julie GOOS, Plaintiff,**

v.

**NATIONAL ASSOCIATION OF REALTORS, Defendant.**

**Civ. A. No. 88–2926.**

United States District Court, District of Columbia.

May 11, 1989.

---

Allan Danov, Washington, D.C., for plaintiff.

Jos. F. Cunningham, Cunningham & Crawford, Baltimore, Md., for defendant.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

Plaintiff Julie Goos alleges that defendant National Association of Realtors ("NAR") fired her in retaliation for her refusal to carry out instructions she felt were recially-motivated to terminate Reina Squire, an NAR employee under her. Her complaint has two counts. First she alleges unlawful reprisal under the District of Columbia Human Rights Act, D.C.Code Ann. § 1–2525, which makes it an unlawful discriminatory practice to retaliate against a person who opposes any practice made unlawful by the Act. Second she alleges breach of contract on two theories: 1) that an "Employee Handbook" and other documents created a contract; and 2) that there was at least an "implied covenant of good faith." NAR has moved for summary judgment on both counts. For the reasons set forth below, the Court shall deny summary judgment as to the unlawful retaliation claim and grant summary judgment as to the contract claims.

## I. RETALIATION CLAIM

■ The elements of a *prima facie* retaliation case are that 1) plaintiff was engaged in a protected activity; 2) the employer took an adverse personnel action, and 3) a causal relationship existed between the two. Moreover, in such a case the plaintiff does not have to prove that the conduct opposed was in fact a violation of Title VII. Instead, the rule is that opposition activity is protected if it is based on a "good faith, reasonable belief that the challenged practice violates Title VII." *Parker v. Baltimore & Ohio Railroad Co.*, 652 F.2d 1012, 1020 (D.C.Cir.1981);[1] *see also Love v. Re/Max of America, Inc.*, 738 F.2d 383, 385 (10th Cir.1984) ("the opposition activity is protected [even] when it is based on a mistaken good faith belief that Title VII has been violated") (citations omitted). Thus in the present case plaintiff only need make out a *prima facie* case that her opposition to firing Ms. Squire was based on a reasonable, good faith belief that Ms. Squire was being terminated for discriminatory reasons. Simply put, Ms. Squire herself, had she sued over her termination, did not have to have a winning case for plaintiff to prevail in this suit.

The Title VII *prima facie* case analysis established in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), has been held to apply to such suits under the District's Human Rights Act, as the Act was modeled on Title VII. *E.g., Thompson v. International Association of Machinists*, 614 F.Supp. 1002, 1011 (D.D.C.1985). Once plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to show a legitimate nondiscriminatory reason for the contested personnel action. If defendant does so, the burden shifts back to plaintiff to show that the reason was a "pretext." NAR argues that the complete burden shifting analysis need not be done in the present case because plaintiff has failed to make out a *prima facie* case of retaliatory discharge. On the present record, however, the Court must disagree.

■ As defendant recognizes, the Court must credit plaintiff's evidence that on June 23, 1988, she was directed by her superior Nannette Crowdus to fire Ms.

---

1. The rationale for this rule is that "making the protected nature of an employee's opposition to alleged discrimination depend on the ultimate resolution of his claim would be inconsistent with the remedial purposes of Title VII." *Id.* at 1019.

Squire. Plaintiff objected on the grounds that it would be "unethical" to terminate Ms. Squire before a less senior marketing representative and the Court finds that a genuine issue of material fact exists whether NAR had at least an informal "last-in-first-out" policy that would have been violated by doing so. Plaintiff also objected on the grounds that Ms. Squire's treatment seemed racially motivated. Ms. Squire is a protected minority. The Court cannot say at this stage that plaintiff's perception of racism was unreasonable as a matter of law.

Plaintiff's abrupt termination on the heels of voicing her opposition to Ms. Squire's termination is also sufficient at this stage to establish a *prima facie* case that there was a causal connection. The instructions from Ms. Crowdus came on June 23, 1988; a meeting between Brenda Yankaskas, an NAR director, and Charles Morrison, a vice president of marketing, at which plaintiff's termination was discussed, took place as late as July 14, 1988; and plaintiff was terminated on August 1, 1988. This temporal proximity is enough to survive summary judgment.[2]

## II. CONTRACT CLAIMS

District of Columbia law recognizes that contractual terms may be implied from an employee handbook or manual. *Washington Welfare Association, Inc. v. Wheeler*, 496 A.2d 613, 615 (D.C.1985); *McConnell v. Howard University*, 818 F.2d 58, 62–63 (D.C.Cir.1987); *Greene v. Howard University*, 412 F.2d 1128, 1132 (D.C.Cir.1969). And, in general, "[w]hether a personnel manual creates contractual rights for the employee is a question for the jury." *Wheeler*, 496 A.2d at 615.

An employer, however, may effectively disclaim any implied contracts. *E.g., Doe v. First National Bank of Chicago*, 865 F.2d 864, 873 (7th Cir.1989) ("We fail to see how a document which clearly disclaims in unambiguous language any purpose to bind the parties can constitute 'a promise

clear enough that an employee would reasonably believe that an offer has been made.' ") (citation omitted) (Illinois law); *Lee v. Sperry Corp.*, 678 F.Supp. 1415, 1418 (D.Minn.1987) (Illinois law); *Castiglione v. Johns Hopkins Hospital*, 69 Md. App. 325, 517 A.2d 786, 793 (1986) (Maryland law), *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987).[3] Moreover, the legal effect of any such disclaimers is, in the first instance, a question for the Court. *E.g., Nettles v. Techplan Corp.*, 704 F.Supp. 95, 97–98 (D.S.C.1988) ("even though the jury would decide if the manual created a contract absent a conspicuous disclaimer, the issue of whether the disclaimer was appropriately conspicuous is, in the first instance, one for the court to decide").

■ Here the manual in existence at the time plaintiff was terminated contains two relevant disclaimers:

This handbook does not constitute an employment contract in whole or in part, and the Association reserves the right to add, amend or delete any policy or procedure stated herein at any time.

. . . .

As an employee of the NATIONAL ASSOCIATION OF REALTORS, you are considered to be an employee-at-will. Under this condition, either you or the Association has the option of terminating your employment and compensation at any time, with or without cause and/or notice.

Defendant's Exhibit 1, at 1, 805. The first clause is the fifth paragraph of the first page, and the second clause is the second paragraph of the section governing termination policy. Although these are not in bold type, outlined in red, or made the subject of a so-called "sign off sheet," this Court, like others, finds it "difficult to imagine what more the defendant might have done to make it crystal clear [that] . . . employees are employees 'at will' who may be discharged with or without cause." *Dell v. Montgomery Ward & Co., Inc.*, 811

---

2. This is without prejudice, of course, to defendant's ability to prove at trial that no such causal connection existed.

3. The District of Columbia Court of Appeals has not spoken to the issue of disclaimers.

F.2d 970, 974 (6th Cir.1987). Furthermore, the Court holds that the clause in the all-important termination section of the manual is adequately "conspicuous" as a matter of law. *Compare Nettles,* 704 F.Supp. at 97 (holding conspicuous as a matter of law disclaimer located in second numbered paragraph of first page and of same color and print size as remainder of manual) (South Carolina law).

Plaintiff's contract claims, therefore, cannot survive summary judgment.

### ORDER

ORDERED that defendant's motion for summary judgment shall be DENIED as to Count I and GRANTED as to Count II of the Complaint.