**McREYNOLDS et al. v. POCAHONTAS CORP.**

No. 6297.

United States Court of Appeals Fourth Circuit.

Argued Oct. 15, 1951.

Decided Nov. 6, 1951.

Frederick T. Kingdon, Mullens, W. Va. (Kingdon & Kingdon, Mullens, W. Va., on brief), for appellants.

Joseph M. Crockett, Welch, W. Va. (Crockett & Tutwiler, Welch, W. Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This appeal is from a decision of the United States District Court for the Southern District of West Virginia. Appellants,

McReynolds, Garay and Ward, along with one Gilmore, instituted suit under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., (hereinafter referred to as the Act), against Pocahontas Corporation (hereinafter called the Company), to recover premium pay for hours of labor performed in excess of forty hours a week. Appellants claim premium wages for the following periods: McReynolds, June 7th, 1948, to June 16th, 1950; Garay, June 7th, 1948, to January 1st, 1949, (at which time he was promoted to salaried chief section foreman); and Ward, August 18th, 1948, to May 15th, 1949.

Appellants were employed as either second or third shift section foremen in the Company's mines at Amonate, Virginia. The Company employed in these operations some sixteen hundred laborers and eighty section foremen. In the hierarchy of supervisory personnel between the section foremen and the mine superintendent, there was a general mine foreman.

The evidence shows that there was a distinction in both responsibility and method of pay between first shift section foremen and the foremen on the second and third shifts. First shift foremen were paid a straight weekly wage, while other foremen were paid an hourly rate with a minimum guarantee of three shifts per week. The section foremen on the first shift were responsible for procuring the necessary supplies for the entire twenty-four hour operation. It was also a part of their duty to determine what working places were to be opened and closed. The section foreman on the second and third shifts were, however, charged with responsibility for the lives and safety of the men working in their section; looking after the ventilation, safety of travel, walkways, driving entries, keeping boreholes ahead, looking after the safety of the roof and equipment, and testing for gas. They had control of the men under them, assigning them to particular work and to different classes of work; and keeping their work records. It was also their responsibility and duty to determine when the mine was safe to operate, to remove the men when they thought there was danger, and to keep them away until the mine was made safe. The second and third shift foremen were recognized as part of management in the contract between the Company and the United Mine Workers. They regularly attended foremen's meetings to discuss the Company's operating problems, and were recognized by the Union employees as a part of the management. The Union employees objected to their doing any manual work or any work that Union men were employed to do.

Upon the facts, the District Court found that appellants were employed "in a bona fide executive" capacity, and were therefore exempt from the Act under the provisions of § 13(a) (1), 29 U.S.C.A. § 213(a) (1), and the regulations promulgated by the Wage and Hours Administrator. 29 Code of Fed.

§ 541.1; effective October, 1940, and amendments thereto effective January, 1950 (hereinafter referred to as the regulations). From that decision appellants have appealed to us.

Appellants first contend that they neither exercised managerial functions nor possessed sufficient discretionary power as to make them exempt employees within the meaning of § 541.1(a) and (d) of the Regulations.[1] With this contention we cannot agree.

Appellants stress the fact that the first shift foremen exercised a measure of con-

1. § 541.1 (a) and (d) read as follows:

The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee * * *

"(a) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

* * * * * *

"(d) who customarily and regularly exercises discretionary powers, and * * * *".

§ 541.1 (a) was amended, effective January, 1950, to read:

"(a) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and"

trol over the foremen on the later shifts since they decided what working places were to be opened and when they were to be closed. The mere fact, however, that one group of foremen exercised some control over another group does not negative a finding that the second and third shift foremen are also "executive" employees.

The evidence shows that second and third shift section foremen, such as appellants, were in complete control of the men on their shifts. There was no other supervisory employee directly over the men, and it appears that the general foreman visited a particular section only once or twice a week. It was for appellants to assign men to particular work, to direct their efforts and to keep the work records for the employees under them. All these circumstances, together with the fact that appellants were recognized by the Union as a part of the management, clearly lead to the conclusion that appellants were managers in their sections.

Nor were appellants lacking in discretionary power. All section foremen were charged with responsibility for the safety of their men and equipment. It was for them to ascertain whether it was safe for the men to work. The argument that appellants could not take their men off a place where they were working, even if they believed it unsafe to continue the work, without the permission of the first shift foremen, appears to this Court to be absurd.

The next question presented is whether the shift guarantee given appellants by the Company satisfies the "salary basis" requirement of the Regulations. § 541.1(e) reads as follows:

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee * * *

"(e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and"

By amendment, the $30 guarantee has been changed to $55. See 29 Code of Fed. Reg., Cum.Supp. § 541.1(e).

The evidence fully supports the District Court's finding that appellants were guaranteed three shifts per week. In view of this finding, what possible difference can it make whether a man is guaranteed a certain weekly wage or a certain number of shifts which will produce a specific wage? In our opinion, what the Regulations mean by a "salary basis" is a guaranteed wage whether the Company operates or not. Any formula which results in such a guarantee is sufficient. It further appears that it is the custom in the coal industry to speak of a shift guarantee rather than a weekly wage. The Company's superintendent testified on this point: "We speak of 'shifts' around mines more than we do of money because—I don't know, it is just a mining term that we use—'three shifts'—but, in the meantime, I knew that we had to pay them a certain amount of money there per week and I guaranteed them that shift work, which would earn them so much a week."

Appellants' final contention is that McReynolds lost his exempt status during strike periods by performing manual labor. This contention can be best answered in the language of the Kentucky Court in Mafizola v. Hardy-Burlingham Mining Co., 306 Ky. 492, 207 S.W.2d 769, 771: "Nor can we agree with plaintiff that the time he spent as a watchman during a strike was nonexempt work. While it is true that ordinarily a watchman's job is nonexempt work, yet when a strike is in progress and a foreman undertakes a watchman's duties, he is performing such services in an executive capacity. In such circumstances, it is only an executive employee who is not a member of the union on strike who can be depended upon to perform such duties. Indeed, it is not unusual for higher executives than a section foreman to perform manual work in the time of a strike, but such are performed in their capacity as executives and they are not acting as laborers."

For these reasons, the decision of the District Court is affirmed.

Affirmed.