Curtis G. THOMAS, et al., Plaintiffs,

v.

COUNTY OF FAIRFAX,
VIRGINIA, Defendant.

Civ. A. No. 89–1597–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 27, 1991.

12. *Administrative Record,* E–14.

Gregory K. McGillivary, Thomas A. Woodley, Washington, D.C., for plaintiffs.

Susan L. Kruger, Asst. County Atty., Fairfax, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is a suit originally brought by seventy eight (78)[1] present and former lieutenants of the Fairfax County Fire and Rescue Department (the "Department") seeking compliance with the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA" or the "Act"). Plaintiffs claim they are nonexempt employees under the Act and are thus entitled to premium compensation for hours worked in excess of the statutory standards. Fairfax County, in response, claims that the lieutenants are executive employees exempt from the Act's overtime requirements.[2] *See* 29 U.S.C. § 213; 29 C.F.R. §§ 541.0 to 541.119 (1990).

This matter came initially before the Court on the parties' cross-motions for summary judgment. For the reasons stated in a November 1, 1990 Memorandum Opinion, 1990 WL 167578, the Court granted plaintiffs' motion and denied the County's, ruling that plaintiffs were not exempt executive employees under the County's pre-August 24, 1990 payment scheme because they were paid on an hourly, rather than a salary, basis. The Court therefore granted plaintiffs' motion. The County then moved for reconsideration. The Court granted this motion and took the entire matter under advisement, including plaintiffs' new motion for interest on damages.

For the reasons stated below, the Court reaffirms its previous conclusion that under the pre-August 24, 1990 payment scheme plaintiffs were not paid on a salary basis. Accordingly, plaintiffs' motion for

---

1. Only seventy five (75) plaintiffs remain, as three were dismissed for failure to comply with discovery.

2. Plaintiffs' summary judgment memoranda also make reference to the FLSA exemption for professional employees, see 29 C.F.R. § 541.301 *et seq.,* but defendant explicitly foreswears reliance on this exemption as a bar to plaintiffs' recovery. Accordingly, issues raised by the professional employees exemption are not addressed here.

summary judgment must be granted as to the pre-August 24, 1990 period,[3] and the County's motion for summary judgment must be denied. Because the issues raised in the County's reconsideration motion merit more extensive treatment, the Court vacates the November 1, 1990 Memorandum Opinion and issues this one in its place. Finally, as to damages, plaintiffs are entitled to compensatory backpay and to prejudgment and postjudgment interest.

## I.  Facts

The material facts are undisputed. The Department is a quasi-military organization maintained by Fairfax County for the purposes of protecting property from fire damage and providing emergency medical care. The Fire Chief controls the Department through an operational chain of command that divides the county geographically into several battalions, each headed by a battalion chief. Each battalion chief supervises five to seven stations. Additionally, three Emergency Medical Service (EMS) captains supervise the operation of the County's EMS units, which are dispersed among the various stations.

### A.  Staffing

Each station is headed by a station captain and is assigned three full shifts of firemen who stand duty on a rotating, twenty four hour shift basis. The equipment assigned to a station determines the shift manning level. A typical station has one engine company and either an Advanced Life Support (ALS) unit or a Basic Life Support (BLS) unit.[4] An engine company requires a suppression lieutenant or the station captain, a technician, and two fire fighters. An ALS unit requires an EMS lieutenant, an EMS sergeant, and a technician. A BLS unit requires two fire fighters, and a special equipment truck requires a sergeant and a fire fighter.

The shift leader is either the station captain, if the captain is assigned to that shift, or the senior lieutenant, if more than one lieutenant is assigned. For example, in stations with just an engine company and a BLS unit, only a suppression lieutenant is assigned, and he or she is the shift leader. Stations with both an engine company and an ALS unit have both a suppression lieutenant and an EMS lieutenant assigned. In those instances, the senior lieutenant serves as shift leader. In addition to lieutenants permanently assigned to a station, the Department maintains a number of relief lieutenants who are available to fill in at a station when an assigned lieutenant must miss a shift.

In summary, lieutenants function as crew chiefs on either engines or ALS units, and the senior lieutenant on a shift also functions as the shift leader unless the station captain is assigned to that shift. Shift leader lieutenants do not receive extra compensation for leading the shift beyond the pay that they would receive for performing their duties with either the engine company or EMS units.

### B.  Pre–August 24, 1990 Pay Scheme

The lieutenants were paid biweekly. Fairfax County determined the amount they received by multiplying their hourly wage[5] by the number of hours they were on duty in what Fairfax County termed a "pay status". A lieutenant was in pay status during the time that his or her shift

---

**3.** The Court must decline the parties' invitation to measure the County's new pay scheme against the FLSA, as material facts concerning the scheme apparently remain in dispute. *See* Part III(B), *infra.*

**4.** Approximately 17 of the 32 fire stations in Fairfax County have ALS units. One station has two engine companies and an ALS unit. Additionally, some stations have special equipment trucks.

**5.** The County argues that a lieutenant's hourly rate is in fact derived from an annual salary. *See* Part III, *infra.*

was scheduled to be at the fire station. The Department has three shifts. Each shift rotated into and out of pay status as follows: 24 hours on, 24 hours off, 24 hours on, 24 hours off, 24 hours on, 96 hours off.[6] This schedule was fixed; any fire fighter, including the lieutenants, could readily determine precisely what days were scheduled for duty simply by knowing the applicable shift and consulting a calendar.

Given this rotation, a lieutenant typically worked, and accordingly was paid for, either 96, 120, or 144 hours during any given biweekly pay period. Over 9 biweekly pay periods, this cycle of 96, 120, or 144 hours repeated itself, so that while a lieutenant's pay varied from paycheck to paycheck, it was, apart from overtime, constant over any given 18 week period.[7] If a lieutenant worked beyond the scheduled hours in pay status, the lieutenant received additional compensation at his or her hourly rate. ▮ Prior to March 1989, if a lieutenant was scheduled to be on duty but was absent for part of the 24 hour period, Fairfax

County docked the lieutenant's pay unless that individual had some form of leave to cover the absence. The county calculated the deduction by multiplying the lieutenant's hourly rate times the hours absent. Beginning in March 1989, Fairfax County instituted a new policy providing that employees the county considered to be exempt under the Act, such as the lieutenants, would no longer be docked pay if they took absences of less than one day and had no leave to cover it. In such cases, Fairfax County would grant these employees administrative leave with pay to make up the difference. And in June 1989, Fairfax County reimbursed all the lieutenants who had received leave without pay for absences of less than one day, retroactive to April 15, 1986.[8]

## II. Applicable Law

This case and others like it stem from *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), in which the Supreme Court held that the FLSA applies

---

**6.** Over one biweekly pay period the three shifts might rotate as follows:

| | Days | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | Total Hours Worked |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Shift | | | | | | | | | | | | | | | | |
| A | | X | O | X | O | X | O | O | O | O | X | O | X | O | X | 144 |
| B | | O | X | O | O | O | O | X | O | X | O | X | O | O | O | 96 |
| C | | O | O | O | X | O | X | O | X | O | O | O | O | X | O | 96 |

X = On duty; O = Off duty.

**7.** This cyclical pay scheme may differ from that used by some other, nearby jurisdictions. For example, in *Hartman v. Arlington County, Virginia*, 720 F.Supp. 1227, 1229 (E.D.Va.1989), *aff'd*, 903 F.2d 290 (4th Cir.1990), the district court stated explicitly that Arlington County paid the plaintiff fire shift commanders on a salary basis without regard to the number of hours actually worked. The opinion in *Fire Fighters Local 2141 v. City of Alexandria, Virginia*, 720 F.Supp. 1230 (E.D.Va.1989), *aff'd*, 912 F.2d 463 (4th Cir. August 24, 1990) is silent as to the manner of payment for certain police and fire officers of the City of Alexandria, but it also does not indicate that plaintiffs in that case raised their payment schedule as a ground for entitlement to premium overtime.

**8.** Accordingly, a preliminary issue to be addressed is the effect on the lieutenants' exempt status of the pre-March 1989 practice of deducting pay at their hourly rate if they were absent for less than one day and did not have leave to

cover the absence. As a general matter, this type of deduction has proved fatal to claims by local governments that fire officials are executive employees. *See, e.g., Banks v. City of North Little Rock*, 708 F.Supp. 1023 (E.D.Ark.1988); *Hawks v. City of Newport News*, 707 F.Supp. 212, 214 (E.D.Va.1988); *Knecht v. City of Redwood*, 683 F.Supp. 1307 (N.D.Cal.1987). But where a local government changes its policy and reimburses its purported executive employees for any deductions caused by an absence of less than one day, as Fairfax County did here, 29 C.F.R. § 541.118(a)(6) creates a "window of correction" that prevents the wrongful deductions from inadvertently waiving the executive exemption. *See Hartman v. Arlington County*, 720 F.Supp. at 1229; *Fire Fighters Local 2141 v. City of Alexandria*, 720 F.Supp. at 1232. Thus, Fairfax County's prior policy of deducting for absences of less than one day that were not covered by leave has no present effect on whether the lieutenants are paid on a salary basis.

to state and local governments.[9] The Act requires that public safety officials receive overtime or compensatory time, unless the officials are exempt, in accordance with a formula set forth at 29 U.S.C. § 207(k). 29 U.S.C. § 213(a)(1) provides an exemption for, among others, "bona fide executives" and permits the Department of Labor to issue regulations defining who are "executives".[10]

Fairfax County considers the fire chief, his deputies, the battalion chiefs, the station captains, and all lieutenants to be executive employees under the Act and thus exempt from the overtime requirements. Significantly, the Department treats sergeants, though they too are officers, as nonexempt employees. Accordingly, sergeants receive premium overtime. The result of these policies is a seemingly anomalous situation in which sergeants may receive more total pay than lieutenants, although the sergeants' base pay is smaller.

▆▆▆ The central question in this case is whether the FLSA executive exemption applies to the plaintiff lieutenants. The quest for an answer properly begins with the recognition of several principles too well-settled to be disputed. First, the terms of coverage of the Act, a remedial statute designed to effectuate Congress' goal of providing employment protection, are to be liberally construed. "Breadth of coverage" is "vital to [the Act's] mission". *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516, 70 S.Ct. 755, 765, 94 L.Ed. 1017 (1950); *Schultz v. W.R. Hartin & Son, Inc.*, 428 F.2d 186, 189 (4th Cir.1970) (Act establishes a "presumption of coverage"). Accordingly, exemptions to the Act, including the bona fide executive exemption, are to be narrowly construed and limited to those "plainly and unmistakably

within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Mitchell v. Lublin, McGaughty & Assoc.*, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959); *Pugh v. Lindsay*, 206 F.2d 43, 46 (4th Cir.1953). Next, Fairfax County bears the burden of proving that the lieutenants fall within the exemption. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Walling v. General Indus. Co.*, 330 U.S. 545, 547–49, 67 S.Ct. 883, 884–885, 91 L.Ed. 1088 (1947); *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282, 286 (4th Cir.1986); *Wirtz v. Charleston Coca Cola Bottling Co.*, 356 F.2d 428, 430 (4th Cir.1966); *Fire Fighters Local 2141 v. City of Alexandria*, 720 F.Supp. at 1232. This burden must be satisfied by "clear and affirmative evidence". *See Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir.1984); *Clark*, 789 F.2d at 286 (stating proof requirement for party asserting analogous administrative employee exemption).

The pertinent regulations provide a "long" and a "short" test for determining whether an employee is a "bona fide executive employee". *See* 29 C.F.R. § 541.1; *Wilson v. City of Charlotte*, 717 F.Supp. 408, 412 (W.D.N.C.1989). The long test applies to employees who are "compensated for [their] services on a salary basis at a rate of not less than $155 per week", 29 C.F.R. § 541.1(f), while the short test applies to employees "compensated on a salary basis at a rate of not less than $250 per week", 29 C.F.R. § 541.119(a). Because the lieutenants indisputably earn more than $250 per week, it is the short test that applies here. In addition to the salary basis requirement, this test further provides that salaried employees are executives if:

9. Congress subsequently amended the FLSA to require local governments to comply with the Act with respect to public safety officials no later than April 15, 1986.

10. Defendant's submissions suggest, but do not press, the notion that the applicable regulations are invalid as applied, as they were arguably promulgated without municipalities in mind. This suggestion is meritless, as even defendant's cited cases apply the salary basis regulations in

the context of local government. *See, e.g., Hartman v. Arlington County*, 720 F.Supp. at 1229; *Fire Fighters Local 2141 v. City of Alexandria*, 720 F.Supp. at 1232; *see also Marshall v. Hendersonville Bowling Center, Inc.*, 483 F.Supp. 510 (M.D.Tenn.1980) (Secretary of Labor is authorized to define and limit, by regulation, the term "executive" in FLSA, and regulations so promulgated are valid and binding and have force and effect of law), *aff'd*, 672 F.2d 917 (6th Cir.1981).

(1) their primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department thereof; and (2) they customarily and regularly direct the work of two or more other employees.

29 C.F.R. § 541.119(a).

The conjunctive statement of these characteristics of executive employment in both the long and the short tests means that an employee is not exempt as an executive unless it is shown that she or he fits all of the exemption's requirements. *See, e.g., Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 27–28 (5th Cir.1964); *Kupperman v. M. & J. Becker, Inc.*, 198 F.2d 765, 769 (2d Cir.1952); *D'Camera v. District of Columbia*, 693 F.Supp. 1208, 1213 (D.D.C. 1988) (employer must meet "every aspect of the definition for an exempt employee"); *Wilson*, 717 F.Supp. at 412. One requirement of both tests is that executive employees be compensated "on a salary basis." If the employees at issue are compensated on an hourly basis, as opposed to a salary, they cannot be considered executives. *See, e.g., Abshire v. County of Kern*, 908 F.2d 483, 486 (9th Cir.1990) (holding battalion fire chiefs not salaried within meaning of FLSA), *cert. denied,* —— U.S. ——, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991); *York v. City of Wichita Falls, Texas*, 727 F.Supp. 1076, 1082 (N.D.Tex.1989) (battalion fire chiefs held not exempt because not paid on a salary basis); *Hawks v. City of Newport News, Va.*, 707 F.Supp. 212 (E.D.Va.1988) (fire captains and lieutenants not exempt executives because not paid on a salary basis); *Banks v. City of North Little Rock*, 708 F.Supp. at 1024–45 (same); *Persons v. City of Gresham, Oregon*, 704 F.Supp. 191 (D.Or.1988) (same); *Hill v. City of Greenville, Texas*, 696 F.Supp. 1123, 1127 (N.D.Tex.1988) (fire captains were not exempt from overtime provisions of FLSA, though they earned more than $250 per week, absent showing that they earned "salary" of more than $250 per week); *Knecht v. City of Redwood City,*

683 F.Supp. at 1311–12; *Donovan v. Kentwood Development Co., Inc.*, 549 F.Supp. 480, 484 (D.Md.1982). Because the Court concludes that plaintiffs are not salaried, it need not reach and decide, with respect to the pre-August 24, 1990 period, the sharply disputed question whether the lieutenants' job duties are primarily managerial.[11]

## III. *Analysis*

### A. Salary Basis

Analysis of whether or not the Fairfax County lieutenants are paid "on a salary basis" properly begins with the pertinent regulatory definition of that phrase:

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a) (1990). The exceptions noted in this definition permit salary deductions:

(1) when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident, 29 C.F.R. § 541.118(a)(2);

(2) for absences of a day or more occasioned by sickness or disability ... if the deduction is made in accordance with a bona fide plan, policy, or practice of providing compensation for loss of salary occasioned by both sickness and disability, 29 C.F.R. § 541.118(a)(3); and

11. This dispute is made more complicated by the fact that lieutenants who are shift commanders perform some managerial duties that non-shift commanding lieutenants do not. Further, the relief lieutenants may, on occasion, perform these duties if they fill in for shift commanders. There is, therefore, the prospect that some plaintiffs may have duties that are primarily managerial while others may not.

(3) for penalties imposed in good faith for major safety violations, 29 C.F.R. § 541.118(a)(5).

But deductions are not permitted for "absences occasioned by the employer or by the operating requirements of the business," 29 C.F.R. § 541.118(a)(1), or for absences "caused by jury duty, attendance as a witness or temporary military leave," 29 C.F.R. § 541.118(a)(4).

■ Neither the Supreme Court nor any other federal court has determined precisely what 29 C.F.R. § 541.118(a) means by "salary basis". On its face, however, the regulation states that an executive employee must receive a predetermined sum, on a weekly or less frequent basis, that does not depend on the quality or quantity of the work performed. More particularly, the language "which amount is not subject to reduction *because of* variations in the quality or quantity of the work performed" (emphasis added) suggests that an executive's pay must not bear a direct causal relationship to the quality or quantity of the work performed. In the context of the present case, 29 C.F.R. § 541.118(a) means simply that a lieutenant's biweekly pay may not be a function of hours worked if it is to fit within the regulation.

This interpretation is supported by other parts of the regulations. For example, the second sentence of § 541.118(a) states that an employee must receive his full salary for any week in which he performs any work "*without regard to* the number of days or hours worked" (emphasis added). Similarly, § 541.118(c), which provides that failure to pay the full salary in the initial or terminal week of employment is not inconsistent with a salary basis of payment, states that only in such exceptional weeks will "the payment of a proportionate part of the employee's salary for the *time actu-*

*ally worked*" satisfy the salary basis requirement. (emphasis added). *See also* 29 C.F.R. § 778.114(a), (b) (providing that a fixed salary may be paid for fluctuating hours, but implying by example that the salary, absent overtime, does not vary with the hours worked); 29 C.F.R. § 778.306 (stating in part that "[i]f an employee is compensated at a fixed salary for a fixed workweek and if this salary is reduced by the amount of the average hourly earnings for each hour lost by the employee in a short work week, the employee is, for all practical purposes, employed at an hourly rate of pay").

The conclusion that an FLSA-exempt executive's pay may not vary as a function of the number of hours worked is also consistent with a common-sense understanding of salaried employment.[12] Certainly a layman would understand that a salaried executive is a person paid an amount, on a weekly or less frequent basis, that bears no relationship to the number of hours worked in any particular week. The Ninth Circuit put this point as follows:

> A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed. It is precisely because executives are thought not to punch a time clock that the salary test for "bona fide executives" requires that an employee's predetermined pay not be "subject to reduction because of variations in the ... quantity of work performed".…

*Abshire v. County of Kern*, 908 F.2d at 486. Similarly, the Third Circuit in *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 184 (3d Cir.1988), *cert. denied sub nom. Claridge Hotel & Casino v. McLaughlin*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988),[13] explained that

> *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 185 (3d Cir.1988) (salary basis requirement is founded "not on logical necessity, but on empirical study").

---

**12.** There is also some indication that the salary basis regulations were intended to embody a practical understanding of the term "bona fide executive." *See Craig v. Far West Engineering Co.*, 265 F.2d 251, 259 (9th Cir.) ("upon examination of the history behind the promulgation of these regulations, it becomes clear that the rationale underlying them is sound and apparently the one practical method of 'defining and delimiting' the rather vague and ambiguous terms used in the statute"), *cert. denied,* 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); *see also*

**13.** In *Brock*, the Third Circuit held that certain casino supervisors were entitled to premium overtime pay. The bona fide executive exemption did not apply to the employees because the employer's payment scheme, which provided a weekly guaranteed payment plus additional hourly pay, did not satisfy the salary basis requirement. Judge Stapleton, concurring, ex-

[s]alary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. In other words, the salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it.

Applying 29 C.F.R. § 541.118(a) to Fairfax County's pre-August 24, 1990 payment system compels the conclusion that the lieutenants are not paid on a salary basis. The lieutenants' pay plainly varies every paycheck with the number of hours they are actually scheduled to work. While lieutenants receive a constant amount over an eighteen week period, their pay is not constant over their two week pay period; it fluctuates as a function of scheduled work. This fact points persuasively to the conclusion that under the pre-August 24, 1990 pay scheme the lieutenants were not paid on a salary basis.

Seeking to escape the obvious inference to be drawn from the variations in the lieutenants' biweekly paychecks, Fairfax County makes several closely related arguments. First, the County argues that the regulations do not require that executive employees receive the same amount each week, but only that they receive a "predetermined amount". And, the argument continues, while the amount of a lieutenant's paycheck may vary, it is predetermined because each lieutenant can readily determine the amount by knowing the ap-plicable shift and consulting a calendar. This amount, the County points out, is not a function of the quantity or quality of a lieutenant's work when on duty, but only of the time spent in a "pay status". This argument is flawed. To begin with, even accepting, *arguendo*, the County's view that the language "predetermined amount" is equivalent to "fixed in advance" rather than to "constant or non-varying amount," [14] the fact that the lieutenants' pay is predetermined does not erase the fact that their pay under the pre-August 24, 1990 pay scheme varied in accordance with scheduled work.

Equally flawed is the County's "pay status" argument, which attempts to distinguish actual "work" from "scheduled work". This argument, to begin with, is inconsistent with applicable regulations and judicial construction of the statutory term "hours worked" within the meaning of the Act. *See* 29 U.S.C. § 203(*o*) (partial definition of "hours worked"); 29 C.F.R. § 785.5 *et seq.* Supreme Court precedent makes clear that all hours an employee is required to give the employer (i.e., scheduled work) constitute "hours worked" regardless of whether any physical exertion takes place. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) ("Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated

pressed the view that 29 C.F.R. § 541.118 implicitly permits compensation above the $250 weekly floor mandated by the regulations to be based on the quantity of work performed. *See* 846 F.2d at 190. The majority rejected this view and emphasized that salary compensation for executives may not vary with the number of hours worked. *See id.* at 184–85.

**14.** The County's interpretation finds some support in the 29 C.F.R. § 541.118(a) language "a predetermined amount constituting all *or part* of his compensation," (emphasis added) which suggests that something less than the normal salary may be paid. On the other hand, the phrase "predetermined amount" may just as easily be construed as meaning a constant amount. This latter interpretation is implied by the use of the adjective "full" in 29 C.F.R. § 541.118(a), which provides that absent specified exceptions, the employee must receive his or her "full" salary. Similarly, 29 C.F.R. § 541.118(c) speaks of a "full weekly salary" and contrasts an employee's "full" salary with a partial salary in the initial or terminal week of employment. 29 C.F.R. § 541.117(a), which provides that the minimum weekly salary required to activate the executive exemption may be translated into equivalent amounts for periods longer than one week, also employs the term "salary basis" in conjunction with fixed amounts. *See also* 29 C.F.R. § 778.114(a) (providing that a salary basis employee may be paid a "fixed salary" for fluctuating work hours and referring to the "salary" as a "fixed amount"). It is undisputed that if the Act demands equal paychecks then the plaintiffs are not salaried, because the County concedes that their biweekly pay fluctuates. The Court does not decide this question, however, because it concludes that plaintiffs are not salaried based on the direct causal relationship of their pay to hours worked within the meaning of the Act.

by the parties as a benefit to the employer"); *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); 29 C.F.R. § 785.7. Whenever an employee is "on duty" or "engaged to wait" in the sense that his time belongs to and is controlled by the employer, the employee is working. *See* 29 C.F.R. § 785.15 (citing, *inter alia, Skidmore v. Swift & Co.*, 323 U.S. at 137, 65 S.Ct. at 163; *Wright v. Carrigg*, 275 F.2d 448 (4th Cir.1960)); 29 C.F.R. § 778.223 (as a general rule, the term "hours worked" includes "all time during which an employee is required to be on duty or to be on the employer's premises"). In the context of this case, there is no substantive difference between "work" while on duty and "scheduled work" in the sense of being on shift. *See* 29 C.F.R. § 785.14 (whether waiting time constitutes time worked under the Act to be determined by common sense in light of the particular circumstances). The community's fundamental purpose in creating a fire and rescue department is to make a group of fire-fighting and rescue specialists continuously and readily available to respond to emergencies. A fire fighter is paid, in part, to be available. For this reason, shifts encompass a full 24–hour period. *See also Knecht v. City of Redwood City*, 683 F.Supp. at 1310 ("Fire Captains are paid to be available for emergency response during a specific number of hours"); *id.* at 1312 ("Fire Captains are paid to be available for a number of specified shifts"). Whether the fire fighter sleeps, trains, cleans equipment, or mows the station lawn while waiting to respond is immaterial. *See* 29 C.F.R. § 785.15 ("fireman who plays checkers while waiting for alarms" is considered to be working within meaning of the Act); 29 C.F.R. § 785.22 (when employee is required to be on duty for 24 hours or more, lunch periods and up to eight hours sleeping time constitutes hours worked in absence of agreement to the contrary). Thus, in reality, a lieutenant's "hours worked" are determined not by what is done while at the station, but by

the amount of time the lieutenant is on shift. Given this, a lieutenant's pay under the pre-August 24, 1990 pay scheme varies directly with the amount of time worked—*i.e.,* the amount of time available for duty.[15] In the language of 29 C.F.R. § 541.118(a), the lieutenants' pay is not only "subject to reduction" because of variations in the quantity of work, but their pay is in fact reduced, on a cyclical basis, in direct correlation with the number of "hours worked". This is antithetical to the concept of a salaried employee. "A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed." *Abshire v. County of Kern*, 908 F.2d at 486.

The County's next argument rests on *McReynolds v. Pocahontas Corp.*, 192 F.2d 301 (4th Cir.1951). In *McReynolds*, the Fourth Circuit held that a payment scheme satisfied the salary basis requirement where it guaranteed a group of mine foremen three shifts of work per week, which coincidentally would guarantee them a wage greater than that required to establish them as executive employees under the regulations then prevailing. Specifically, the court stated that "what the Regulations mean by a 'salary basis' is a guaranteed wage whether the Company operates or not." 192 F.2d at 303. The County claims that because plaintiffs have a fixed shift schedule, they have a guaranteed wage.

Close scrutiny shows that *McReynolds* is inapposite. That case did not involve a cyclical payment scheme. There, the mine foremen's pay did not vary in sequence with the number of hours worked. Instead, the foremen worked three shifts per week and received a constant weekly wage. Accordingly, the Fourth Circuit properly concluded that three shifts per week, in that context, was the functional equivalent of a fixed weekly wage. This holding is based on different facts and is not inconsistent with the result reached here. The

---

**15.** The County's term "pay status" also covers periods of paid leave such as sick, annual, or administrative leave. This factor lends some support to the County's position, but it is not ultimately persuasive because, as a general matter, a shift firefighter in "pay status" is typically on duty.

fire lieutenants, unlike *McReynolds'* mine foremen, were paid biweekly, did not receive a constant biweekly wage, and did not work a constant number of hours across each biweekly pay period. *McReynolds* simply does not support the broader proposition that any fixed shift schedule satisfies the salary basis requirement.

*McReynolds* is inapposite in another important respect. As the *McReynolds* court recognized, the mine foremen in that case relied on an established custom in the coal industry that effectively guaranteed them a fixed weekly salary. *See* 192 F.2d at 303 (quoting the company superintendent as stating "I knew we had to pay them a certain amount of money there per week and I guaranteed them that shift work, which would earn them so much a week"). Put differently, the foremen could rely on a guaranty extrinsic to the employer's own shift policy; this is implicit in the court's statement that "what the Regulations mean by a 'salary basis' is a guaranteed wage *whether the Company operates or not.*" (emphasis added).[16] By contrast, the record in this case is devoid of any "guaranty", in the form of custom or contract, that a lieutenant will work at least 96 hours every two weeks. If a guaranty exists, it must be derived from the shift schedule under which the lieutenants work either 96, 120, or 144 hours every two weeks. But nothing in the record indicates that the County may not unilaterally change the shift schedule. Accordingly, the lieutenants have no real "guarantee" that they will be scheduled to work any fixed number of hours in each pay period. And since the County bears the burden of establishing the executive exemption, this absence of record evidence on the existence of any such guaranty weighs against the County's position.

Closely related to *McReynolds* is the segment of 29 C.F.R. § 541.118(b) which provides that "an employee paid on a daily or shift basis" will meet the salary basis requirement if the employment arrangement provides that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work. The County seizes on the reference to shifts in § 541.118(b) and argues that this regulation is conclusive on the salary basis issue because fire lieutenants typically are scheduled to work at least 96 hours per pay period, and hence they receive a biweekly salary well in excess of the threshhold required by § 541.117.

This argument is unconvincing. First, § 541.118(b) does not establish an exception to § 541.118(a). A pay scheme must meet the requirements of § 541.118(a) independently of whether it meets those of § 541.118(b). Section 541.118(b) is entitled "minimum guarantee plus extras." The summary statement in § 541.118(b) states that "additional compensation *besides the salary* is not inconsistent with the salary basis of payment" (emphasis added). In other words, § 541.118(b) applies only *after* an employee has received a salary. This section therefore does not relieve an employer of the burden of meeting the salary requirement specified in § 541.118(a). The pre-August 24, 1990 payment scheme fails this independent requirement. Second, the phrase "paid on a shift basis" is not unambiguous. It might arguably be interpreted in either of two ways: 1) taken in context with the other examples identified in § 541.118(b) (commissions on sales or bonuses on profits given to an employee over and above a salary), as well as with the design of the section as a whole, i.e., "minimum guarantee plus extras," the "paid on a shift basis" language could mean that an employee may be paid an additional sum per shift in addition to a base wage; 2) alternatively, the language could mean that an employer may calculate an employee's salary using a shift figure rather than an annual lump sum amount, provided the employee receives at least the minimum week-

---

16. *See also Brock v. Claridge Hotel and Casino,* 846 F.2d at 182 (casino supervisors executed written contracts with employer which guaranteed a minimum weekly payment). 29 C.F.R. § 541.118(b) also seems to imply the necessity of some type of contract when it describes a guarantee as an "employment arrangement [which] includes a provision" concerning the minimum amount of pay specified in the regulations.

ly amount required by the regulations.[17] In either event, the phrase "paid on a shift basis" is inapplicable here because plaintiffs are not paid an additional sum per shift on top of a base wage, nor is their pay calculated in shift units, of twenty-four hours or otherwise. No type of shift unit appears anywhere on the County's pay scale exhibit. Rather, the County's own argument is that the lieutenants' biweekly pay is calculated by means of an hourly figure—albeit derived from an annual sum—multiplied by total scheduled working hours in the biweekly period. Third, § 541.118(b)'s "shift basis" language expressly conditions satisfaction of the salary basis test on the presence of a guaranteed minimum payment. As explained above, however, while plaintiffs currently earn more than the regulatory minimum, there is no persuasive evidence that they are "guaranteed" any particular biweekly pay should the County decide to change the shift schedule. For all these reasons, the Court is not persuaded that reference to § 541.118(b) overcomes the inference of a violation of § 541.118(a) stemming from the fact that plaintiffs' biweekly pay varies in accordance with hours worked within the meaning of the Act.

Finally, the County argues that because it employs a single payroll system for all county employees, it would be administratively difficult to pay the lieutenants 26 equal paychecks per year; a new and separate pay system would be required for fire lieutenants. This, too, is unconvincing. To begin with, administrative convenience can-

not justify violations of the Act. Nor would it be difficult to divorce the lieutenants' biweekly pay from hours worked. Given that a lieutenant's pay is constant over an 18 week period, the County could easily average it out and pay the lieutenant a constant salary every two weeks. Alternatively, the County could simply divide a lieutenant's annual total, as represented on the pay scale, into 26 increments. In sum, then, none of defendant's arguments persuasively rebuts the conclusion that plaintiffs were not paid on a salary basis under the pre-August 24, 1990 pay scheme.

This conclusion is further supported by three factors apart from the cyclical nature of the pre-August 24, 1990 payment scheme. First, the County does not dispute that a lieutenant's pay is calculated by multiplying the time in "pay status" by an *hourly rate of pay*. While not itself dispositive, this fact suggests that the County views the lieutenants in hourly terms rather than in annual terms, as would be the case if their pay was calculated by simply dividing a lump sum salary into twenty-six biweekly paychecks.[18]

A second factor indicative of the lieutenants' status as hourly employees is that they receive additional pay at an hourly rate for hours worked beyond their regularly scheduled time. This overtime pay is inconsistent with salaried status in two respects. First, the concept of "overtime" pay is inherently inconsistent with the common-sense understanding of salaried execu-

---

17. A third interpretation, that an employee may literally be paid, i.e. actually receive his or her pay, at the end of each shift, would seem to conflict with the requirement in § 541.118(a) and § 541.117(a) that a salary be paid on a *weekly or less frequent* basis. In any event, plaintiffs are paid biweekly, and payday may arrive at various points in the duty cycle.

18. In its motion for reconsideration, the County argues that the lieutenants' hourly wage rates are in fact derived from annual salary figures because state law requires the County Board of Supervisors to establish a compensation schedule that assigns pay ranges to all County employees. This argument is not persuasive. To begin with, whether state law or local ordinance requires payment of a "salary" is irrelevant;

what matters is whether plaintiffs are actually salaried within the meaning of the Act. Moreover, the County concedes that the hourly rate is derived by dividing the annual pay figure by the 2,912 hours per year that the lieutenants are scheduled to work. The fact that the County sees fit to schedule plaintiffs for a fixed number of hours itself is arguably inconsistent with a common-sense understanding of salaried executive status. *See Abshire v. County of Kern,* 908 F.2d at 486 ("A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed"). Consequently, the state-mandated annual pay scale is not dispositive proof that the lieutenants' pay should be viewed in annual, as opposed to hourly, terms.

tive status.[19] Second, the measure of overtime pay by an hourly rate supports the inference that plaintiffs are hourly employees.[20] To counter this, the County relies on 29 C.F.R. § 541.118(b), which provides that "additional compensation besides the salary is not inconsistent with the salary basis of payment," and the *Hartman* and *Fire Fighters Local 2141* decisions, which state that overtime paid at an hourly rate "is expressly permitted by § 541.118(b)." *See* 720 F.Supp. at 1229; 720 F.Supp. at 1232.[21] This reliance is misplaced. To begin with, § 541.118(b) identifies three examples of additional compensation that will not defeat a salary basis of payment: a commission based on sales, a bonus based on profits, and daily or shift payment. *See Brock v. Claridge Hotel and Casino*, 846 F.2d at 184. While the regulation does not state that these examples are exclusive, § 541.118(b) nowhere mentions "overtime", which is specifically treated in 29 C.F.R. § 778 *et. seq.* Consequently, § 541.118(b) does not "expressly permit" overtime payments to salaried employees. In addition, § 541.118(b) does not approve additional compensation *computed by means of an hourly rate;* in fact, none of the examples cited in the regulation is explained in terms of hourly rates. Accordingly, the Court finds more persuasive the decisions cited above which recognize that overtime computed by an hourly rate is indicative of an hourly, rather than a salaried, basis of payment.

Third, the County's policy regarding daylight savings time is yet another indication that the lieutenants are hourly, not salaried, employees. In the spring, when clocks are moved ahead one hour, all lieutenants and other fire fighters on duty must use one hour of leave to compensate for working one hour less on their shifts. Formerly, when a lieutenant had insufficient accumulated leave for this purpose, he or she was docked one hour's pay. Beginning in the spring of 1990, however, pursuant to a March 1989 departmental policy change regarding absences of less than one day, those lieutenants with no accumulated leave available received administrative leave with pay.[22] Even so, granting these lieutenants administrative leave highlights the fact that the remaining lieutenants on duty that night who have a sufficient leave balance are docked one hour of leave for that shift.[23] The fact that the County deems it necessary to dock an hour of leave is inconsistent with the concept of a salaried executive. The regulations describe an executive as a person

**19.** *See Abshire v. County of Kern*, 908 F.2d at 486 ("Such additional compensation for extra hours worked is also not generally consistent with salaried status"); *York v. City of Wichita Falls, Texas*, 727 F.Supp. at 1082 (citing overtime paid to battalion fire chiefs as an indicator that employer "has in fact treated the Battalion Chiefs as nonexempt employees"); *Banks v. City of North Little Rock*, 708 F.Supp. at 1024 ("Payment of a fixed amount plus additional hourly wages for extra hours worked is not consistent with salaried status").

**20.** *See Abshire v. County of Kern*, 908 F.2d at 486, 487 n. 2 (in concluding that battalion fire chiefs were not salaried, the court, *inter alia,* considered that they received overtime pay that was not "measured loosely" but rather "provided on an hour-by-hour basis"); *Brock v. Claridge Hotel and Casino*, 846 F.2d at 184–85 ("a basic tension exists between the purpose behind the salary requirement and any form of hourly compensation"); *Knecht v. City of Redwood City*, 683 F.Supp. at 1312 (overtime compensation measured by minutes is indicative of a non-salary basis of payment).

**21.** Both the results and general reasoning of these decisions were affirmed on appeal. *Hartman v. Arlington County, Virginia*, 903 F.2d 290 (4th Cir.1990); *Fire Fighters Local 2141 v. City of Alexandria, Virginia*, 912 F.2d 463 (4th Cir. 1990). In neither case, however, did the Fourth Circuit address the precise set of facts at issue here.

**22.** Affidavits submitted after oral argument indicated that four or five lieutenants received administrative leave with pay for the shift to daylight savings time because they did not have a sufficient leave balance. The Department scrutinized leave records to ensure that no lieutenant was docked pay. One lieutenant reportedly had leave but recorded leave without pay on his time sheet. The County has corrected this error, presumably docking that lieutenant's leave balance.

**23.** This daylight savings time example is merely part of the more general scheme that permits the County to dock a lieutenant's leave balance for absences of less than one day, but precludes docking his or her pay for such absences.

compensated without regard to the number of hours worked, so it should be immaterial that a lieutenant is on shift the night of a time change. Cf. Knecht v. City of Redwood City, 683 F.Supp. at 1312 (system of charges against sick leave and vacation time made on hourly basis was more indicative of hourly wage system of payment than of a salary basis of payment).

In its motion for reconsideration, the County argues that the daylight savings time example deserves no weight in the Court's calculus. In support, the County relies on a statement in Fire Fighters Local 2141 to the effect that the concept of "salary" does not include leave. See 720 F.Supp. at 1232. This argument is not persuasive. To begin with, the County's daylight savings policy is not dispositive, but rather only a supplemental indicator that the County's principal focus is on the lieutenants' hourly behavior, not on the overall constant value of their services per pay period. Put simply, while the concept of "salary", strictly construed, may not include leave,[24] the docking of one hour's leave for some lieutenants for daylight savings time affronts the concept of a salaried executive. Accordingly, this daylight savings policy supplements the inference that the County treats the lieutenants as hourly employees.

In summary, the County's pre-August 24, 1990 payment scheme violates the regulatory salary basis test because it varies a lieutenant's pay every two weeks in direct correlation with the number of hours worked. Moreover, this conclusion finds support in other features of the scheme, including the overtime and daylight savings policies. The question is a close one, but it is settled beyond dispute that exemptions to the FLSA are limited to those employees "plainly and unmistakably within [the] terms and spirit" of the exemption. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295–96, 79 S.Ct. 756, 759–760, 3 L.Ed.2d 815 (1959); Schultz v. W.R. Hartin & Son, Inc., 428 F.2d 186, 189 (4th Cir.1970). Accordingly, in circumstances which are not plain or unmistakable, the presumption of coverage should control. In Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that Rule 56(c), Fed.R. Civ.P. mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Defendant has failed to carry its burden of proving that plaintiffs clearly are exempt from the overtime provisions of the FLSA. Summary judgment is therefore proper. See Banks v. City of North Little Rock, 708 F.Supp. at 1025; Wilson v. City of Charlotte, North Carolina, 702 F.Supp. 1232, 1238 (W.D.N.C.1988); Knecht v. City of Redwood City, 683 F.Supp. at 1312. Accordingly, plaintiffs' motion for partial summary judgment as to liability must be granted, and defendant's motion for summary judgment is denied.

### B. New Payment Scheme

■ On August 24, 1990, Fairfax County implemented a new countywide payroll system, the Personnel Research Information System ("PRISM"). In its motion for reconsideration the County argues that whatever the result might be under the old pay scheme, PRISM ensures a salary basis and, as a result, the County should not be

---

**24.** In making this determination, the Fire Fighters Local 2141 court relied in part on a Department of Labor letter ruling that permitted an employer to deduct leave, but not pay, for absences of less than one day. See 720 F.Supp. at 1232. This letter ruling, which was neither submitted nor argued in the case at bar, states no more than that substitutions of leave for absences of less than one day, absent other factors, will not defeat the executive exemption. See id. But in the company of other factors indicative of an hourly payment scheme, the docking of leave weighs in favor of a finding of non-salaried status. Nor is it self-evident, as the County seems to claim, that the concept of "salary" does not address leave. See Abshire v. County of Kern, 908 F.2d at 487 n. 3 (noting, without deciding, that a strong argument can be made that deductions from leave instead of pay are not consistent with the concept of a "salaried" employee).

liable for back wages after August 24, 1990. In support, the County submits two affidavits from Fairfax County Personnel Director Cornelius O'Kane. Plaintiffs respond that PRISM is different from the old system in minor respects, but still does not provide them with a salary basis of compensation. They submit two affidavits of plaintiff David Holland in support.

At oral argument on the County's motion for reconsideration, counsel for both parties appeared to deny any dispute of fact concerning PRISM and how it operates.[25] Yet the current record suggests the existence of a conflict. Thus, plaintiff Holland, by affidavit, states that when a shift firefighter reports a low number of work hours or takes unpaid leave under certain circumstances, he or she will not receive the PRISM rate of pay for that pay period, but instead will be paid a sum computed as the firefighter's hourly rate of pay multiplied by the actual number of hours worked. In contrast, Personnel Director O'Kane criticizes Holland's claim and states "[i]f a shift lieutenant works any part of a shift he is paid as if he worked the entire shift." This conflict goes to two issues central to the determination of whether plaintiffs are compensated on a salary basis: (i) whether the new pay system completely breaks the causal relationship of pay to working hours, and (ii) whether plaintiffs are in fact guaranteed any amount of pay in a pay period. Accordingly, because this apparently material issue of fact remains in dispute, summary judgment with respect to PRISM on the present sparse record is inappropriate. Rule 56(c), Fed.R.Civ.P.

**25.** In particular, the parties agree that under PRISM shift firefighters receive, in their first biweekly pay period of a 28–day month, and *regardless of the number of hours spent in "pay status,"* 106/2912 of their annual pay, an amount equivalent to 106 multiplied by their hourly rate of pay. The parties also appear to agree that in the second biweekly pay period, plaintiffs receive a fraction of what the County terms their "annual salary" computed as (number of scheduled hours in 28–day period minus 106) divided by 2912.

### C. Damages

#### 1. *Back Wages*

An employer is liable for three years in back wages if the FLSA violation was "willful", but only two years if it was not. 29 U.S.C. § 255(a). In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court made clear that ordinary violations of the Act are subject to the two-year limitations period. To obtain the benefit of the three-year period, the complainant must prove that the employer either knew or acted with reckless disregard for whether its conduct was prohibited by the Act. In this regard, the Supreme Court noted that unreasonable or negligent conduct is not "willful". *See id.* 108 S.Ct. at 1681.

There is no record evidence suggesting that the County either knew its classification of plaintiffs as exempt executives was prohibited by the Act or exhibited reckless disregard for whether plaintiffs were covered employees. In fact, the evidence is to the contrary. Certainly, the County was aware of the Act and indeed changed its policies in 1989 to avoid a violation. The provision of administrative leave with pay to cover plaintiffs' brief absences from work shows an obvious concern for the many decisions, some cited herein, holding that deductions from pay for absences of less than one day are fatal to exempt executive status. On the other hand, since there apparently is no reported decision dealing with a cyclical payment structure like that at issue here, the County could not have actual knowledge that its policy constituted a violation. Accordingly, the County is liable only for two years of back wages.[26]

**26.** The County's arguments with respect to interest, see Part III(D)(1), *infra,* raise the question whether plaintiffs' award of back pay should consist of gross wages or wages net of taxes. Had plaintiffs received premium overtime in the past, the County would have been required to withhold social security and state and federal income taxes. While there appears to be no FLSA case on point, the issue has received attention in the analogous Title VII context, where awards of back pay are common. There, courts reach differing results on whether taxes should be deducted from back pay. *See* Employment

### 2. *Liquidated Damages*

■ An employer who violates the Act "shall be liable" for liquidated damages equal to the amount of compensation awarded. 29 U.S.C. § 216(b). The employer can escape or reduce this liability if it shows its actions were "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. Such a showing has been convincingly made here. The County has demonstrated both good faith and a reasonable basis for its conduct. It cannot be seriously disputed that the County intended to comply with the Act and took deliberate, if not wholly effective steps, to achieve this end. For example, the County's provision of administrative leave with pay to the lieutenants to cover short absences was plainly an effort to avoid an FLSA violation. Similarly, the County's reimbursement of past deductions in 1989 is an additional indicator of good faith. Furthermore, the County's legal position is far from frivolous. The ambiguity of the regulations at issue and the closeness of the question presented, particularly the fact that no reported decision appears to have applied the Act to a pay scheme like the pre-August 24, 1990 cyclical pay scheme, "all argue that [defendant] had a reasonable basis for presuming its pay plan complied with the provisions of the FLSA." *Brock v. Claridge Hotel and Casino*, 846 F.2d at 187; *see also Kelly v. Ballard*, 298 F.Supp. 1301, 1309 (S.D.Cal. 1969) (novel or difficult question regarding applicability of the Act weighs in favor of denial of liquidated damages). Plaintiffs offer no persuasive evidence to the contrary. Accordingly, the Court concludes that liquidated damages are unwarranted.

### D. Interest

Plaintiffs have moved for both prejudgment and postjudgment interest on any damages to which they are entitled. The County has filed a response that contests only the request for prejudgment interest.

### 1. *Prejudgment Interest*

■ The basic purpose of prejudgment interest is to make prevailing plaintiffs whole for the wages or damages wrongfully withheld by the defendant. *See, e.g., Cline v. Roadway Express*, 689 F.2d 481, 489 (4th Cir.1982) ("prejudgment interest is necessary, in the absence of liquidated damages, to make the individual discriminatee whole"). Interest compensates for delay in receiving the money and may offset the effect of inflation on the withheld funds. *See Hamilton v. 1st Source Bank*, 895 F.2d 159, 166 (4th Cir. 1990). The inherent delays of the administrative or judicial processes should not further disadvantage prevailing employees. *See Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir.1986). In the Fourth Circuit, the prevailing standard appears to be that the decision to award prejudgment interest is a discretionary one for the trial court, which should consider the equities of the particular case. *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1401 (4th Cir.1990).

■ As noted with respect to damages, this case presented a novel and difficult question. Neither party may be considered a wrongdoer. The County argues, accordingly, that prejudgment interest should not be awarded because it acted in good faith.

---

Discrimination Law 539 (ABA 2d ed. Cum.Supp. 1989) (citing cases). Courts do not disagree, however, with respect to the general principle that employer-paid back pay in satisfaction of a judgment constitutes wages for purposes of income taxes and withholding, that tax authorities must receive their due, and that neither plaintiffs nor defendants should receive windfalls. *See* B. Schlei & P. Grossman, Employment Discrimination Law 1449 (2d ed. 1983) (citing National Labor Relations Board, Title VII and ADEA decisions). Here, the Court concludes that these principles may best be satisfied by having the County withhold taxes and remit them to the appropriate revenue authorities; plaintiffs may then seek to reclaim any excess withholding according to their individual circumstances. This process will most closely approximate the actual pay that plaintiffs should have received. *Cf. Tanaka v. Department of the Navy*, 788 F.2d 1552 (Fed.Cir.1986) (federal and state taxes are properly withheld from federal employee back pay awards at the rate applicable to the year of award); *Blim v. Western Electric Co.*, 731 F.2d 1473, 1480 (10th Cir.) (back pay subject to withholding in ADEA case), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984).

There is no dispositive Fourth Circuit authority on the question whether good faith alone is sufficient to overcome the basic prejudgment interest objective of making prevailing plaintiffs whole.[27]  Other circuits accord varying weight to the good faith factor.  In *E.E.O.C. v. County of Erie*, 751 F.2d 79, 81–82 (2d Cir.1984), the Second Circuit stated that "the bona fides of the employer is but one factor to be considered" and found that good faith did not save the employer from interest on the facts presented.  Several other circuits hold that there is a presumption in favor of prejudgment interest; in other words, it is ordinarily an abuse of discretion not to award the interest.  *E.g., Brock v. Richardson*, 812 F.2d 121 (3d Cir.1987); *Ford v. Alfaro*, 785 F.2d at 842; *Secretary of Labor v. Daylight Dairy Products, Inc.*, 779 F.2d 784 (1st Cir.1985); *see also Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55 (2d Cir.1984); *McLaughlin v. McGee Bros. Co.*, 681 F.Supp. 1117, 1138 (W.D.N.C.1988) (quoting presumption language of *Donovan*); *Marshall v. Board of Education*, 470 F.Supp. 517, 519–20 (D.Md.1979) (employer's good faith generally "is not a sufficient reason for denial of prejudgment interest"), *aff'd mem.*, 618 F.2d 101 (4th Cir.1980).  Given the apparent weight of authority, see *Marshall v. Gerwill, Inc.*, 495 F.Supp. 744, 755 (D.Md.1980) ("[t]he weight of authority would, even in the face of an employer's good faith, appear to permit pre-judgment interest"), the Court concludes that prejudgment interest is appropriate.

▮▮▮  The County also argues that prejudgment interest, if awarded, should not be calculated by applying the Virginia statutory rate[28] to the gross amount of plaintiffs' damages, on the theory that otherwise plaintiffs would reap a windfall.  Had plaintiffs received premium overtime pay at the time it was earned, the County would have deducted the appropriate federal income taxes, social security taxes, and state taxes.  The County thus urges that the Court either (i) reduce the eight percent statutory interest rate to six percent to account for the fact that plaintiffs properly would have received only an amount net of taxes, or (ii) calculate prejudgment interest by applying the eight percent rate to a net, rather than a gross, award.

The County's first suggestion is unpersuasive and arbitrary.  No authority is cited for the proposition that a court may depart from the statutory interest rate.  The Virginia legislature phrased the statute in mandatory terms.  *See* Va.Code § 6.1–330.54 (1987) ("[t]he judgment rate of interest shall be an annual rate of eight percent").  The County's second suggestion, however, is reasonable.[29]  The purpose of prejudgment interest is to make prevailing plaintiffs whole by compensating them for money they could have earned on funds wrongfully withheld.  Applying the interest rate to a net amount will permit the County to approximate, though perhaps not precisely duplicate, the cash in hand that plaintiffs would have received.  Plaintiffs would thus be more accurately compensated for the loss of the use of their wages in the prejudgment period.  Moreover, this adjustment is consistent with the statutory scheme.  Va.Code § 6.1–330.54 provides that interest at the statutory rate "shall apply to ... prejudgment interest pursuant to § 8.01–382".  Section 8.01–382, in turn, provides that a court's judgment or decree "may provide for interest on any

**27.**  In *Dole v. Shenandoah Baptist Church*, the district court concluded that prejudgment interest was not warranted where the defendant had acted in good faith *and* had been in compliance with the Act for several years prior to the suit.  *See* 707 F.Supp. 1450 at 1463 (W.D.Va.1989).

**28.**  Why the Virginia statutory rate should apply in this Fair Labor Standards Act case is neither apparent nor suggested by any authority offered by the parties.  Nevertheless, the parties do not dispute, and in fact seem to acquiesce in, application of the Virginia interest rate.

**29.**  More particularly, the County suggests that it calculate prejudgment interest by first calculating the percentage that a plaintiff's net award (the gross award less social security, federal and state income taxes) bears to the gross award.  Next, that percentage would be applied to the gross award for each work period, and the interest rate of eight percent per annum applied to the result.  In sum, the gross award for each work period would be reduced by a fixed percentage, and the interest factor then applied to the reduced amount.

principal sum awarded, *or any part there-of*" (emphasis added). Plaintiffs' objection that this system does not account for the differing tax circumstances of plaintiffs is unpersuasive. Individual plaintiffs may have been entitled to varying tax deductions or investment options, but this would have been reflected only in their subsequent tax returns, not in how much pay they actually received from the County after withholding. In contrast, plaintiffs' individual work-related incomes at the time are well known. In any event, prejudgment interest need not and cannot replace precisely what a plaintiff would have received; for example, by enacting a fixed statutory rate, the Virginia legislature necessarily intended only to approximate the interest that a prevailing plaintiff could have earned. Accordingly, in addition to back wages plaintiffs are entitled to prejudgment interest at the Virginia statutory rate applied to the amount of wages they would have received net of taxes.

### 2. *Postjudgment Interest*

█ Postjudgment interest is due on awards under FLSA in accordance with 28 U.S.C. § 1961. *See, e.g., Reeves v. International Tel. & Tel. Corp.*, 705 F.2d 750, 751–52 (5th Cir.1983). Contrary to plaintiffs' suggestion, 28 U.S.C. § 1961 specifies a federal interest rate and thus precludes application of Virginia's statutory rate. *See, e.g., Ford v. Alfaro*, 785 F.2d at 842. Accordingly, plaintiffs are entitled to interest from the date of judgment until the time of payment at the appropriate federal rate.