Stanley E. MASTERS, et al., Plaintiffs,

v.

CITY OF HUNTINGTON, a municipal corporation, Defendant.

Civ. A. No. 3:88–0805.

United States District Court,
S.D. West Virginia,
at Huntington.

May 13, 1992.

Charles W. Peoples, Jr., Huntington, W.Va., for plaintiffs.

Scott A. Damron, Vinson, Meek & Pettit, Huntington, W.Va., for defendant/counterclaimant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TAYLOR, United States Magistrate Judge.

Under Section 7 of the Fair Labor Standards Act (hereinafter "FLSA" or "the Act"), 29 U.S.C. § 207(a)(1), an employer may not require an employee to work more than forty hours in a workweek[1] unless the employee receives overtime compensation at a rate of one and one-half times his regular rate of pay. Employers, however, are not required to pay overtime to employees who are employed in a *bona fide* executive capacity. 29 U.S.C. § 213(a)(1). In these bifurcated proceedings, in which the Court has previously determined that the City of Huntington failed to comply with the overtime compensation requirements of the Act with regard to the pay of its firefighters, the City has denied liability to certain of the plaintiffs—those holding the rank of deputy chief, captain and lieutenant—asserting that employees holding these ranks are exempt from the FLSA overtime requirements under the Act's executive exemption. This phase of the bifurcated proceeding has been submitted to the Court for trial on the basis of a stipulated record which includes certain depositions and exhibits, as well as the record of proceedings in the initial phase.

Congress provided in § 213(a)(1) that terms such as employment in a "bona fide executive ... capacity" were to be "defined and delimited from time to time by regulations of the Secretary," and in 29 C.F.R. § 541.1(f) the Secretary promulgated what has been characterized as the "short test," applicable to employees who are, as are deputy chiefs, captains and lieutenants, paid more than $250.00 a week. Under this test, employees will be deemed employed in an executive capacity if: (1) they are compensated on a salary basis; (2) they are compensated at a rate of not less than $250.00 a week; (3) their primary duty consists of the management of the enterprise in which they are employed or a customarily recognized department or subdivision thereof; and, (4) they customarily and regularly direct the work of two or more other employees. In evaluating defendant's assertion of an exemption for deputy chiefs, captains and lieutenants, the Court takes cognizance of the remedial nature of the Act and the requirement that its "terms of coverage ... are to be liberally construed." *Thomas v. County of Fairfax, Virginia*, 758 F.Supp. 353, 358 (E.D.Va.1991). Concomitantly, exemptions, including the exemptions sought by the City of Huntington for those it contends are executive employees, are to be "narrowly construed," *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960), with the burden resting on the employer to establish that employees are exempt from coverage under the Act. *Corning Glass Works v. Brennan*, 417 U.S. 188, 197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974).

Considering initially only the ranks of deputy chief and captain, the Court concludes, based upon a review of the evidence, that plaintiffs' holding these ranks are executive employees within the meaning of the Act and the regulations. It is conceded that deputy chiefs and captains are compensated at a rate of not less than $250.00 a week and that they customarily

---

1. Firefighters employed by public agencies on a "work period" basis are entitled to overtime compensation at a rate of one and one-half times their regular rate for time worked in excess of fifty-three hours in a week. 29 U.S.C. § 207(k); 29 C.F.R. § 553.201(a) and § 553.230(c).

and regularly direct the work of two or more employees. At issue is the question of whether these officers are compensated on a salary basis and whether their primary duty is managing a customarily recognized department or subdivision of the enterprise in which they are employed.

■ Within the fire department there are six fire stations which are manned by three shifts of firemen on a rotating, twenty-four hour basis. Eighteen of the twenty-one captains employed by the department are designated shift captains.[2] Each of the shift captains is assigned to one of the three shifts and has charge of one of the six fire stations during that shift. From the testimony, it is obvious that captains perform many of the same tasks required of firefighters assigned to a station. Thus, captains may clean floors, cut grass and perform other kinds of manual labor during their shift which could not, in any sense, be considered a function of management. Moreover, much that is required to be accomplished during a shift is subject to Directives and Standard Operating Procedures issued by the fire chief or governed by the Manual of the Fire Department, referred to as the "Green Book," and there is clearly a certain routine which is followed during a shift that alleviates the need for a captain to continually issue orders as to what tasks must be accomplished.[3] Nevertheless, and though one captain in his testimony seemed to indicate that he was not in command of the station during his shift, it is apparent, and the Court so finds, that captains have charge of the fire station during their shifts and that, in what has been described in the testimony as a military type organization, firefighters assigned to the station houses are subject to their orders with regard to a myriad of tasks which are required to be performed.

Included in the duties assigned a shift captain is responsibility for assuring that all firefighting equipment is in good order and in condition for immediate use. He must determine whether all members are present at the beginning of the shift and, when members are absent, has the authority to hold over, for an hour, firemen from the previous shift. Captains may assign firemen in their shift to particular jobs, such as driver or nozzleman. The captain maintains the station log book in which he records "all company activities," including those present, absent, reasons for absences, alarms and "everything in any manner pertaining to the interests of the department." Captains are responsible for maintaining an inventory of property at station houses and for requisitioning supplies and necessary repairs to equipment. It is his responsibility to see that required training is conducted, and, while training exercises are frequently led by others, he also conducts training sessions for the members of his shift. Captains evaluate the performance of probationary firemen on a monthly basis, and those reports are utilized by the fire chief in determining whether he will recommend to the mayor that probationary firemen be hired. When firemen commit an infraction of the rules and regulations, a captain may impose penalties involving loss of privileges "or other penalties not unusual or excessive," and "in emergencies" he can suspend a fireman "for flagrant violations of the rules or intoxication." Captains do not, however, have the authority to hire, fire or promote employees. In responding to fire alarms, the station captain, if only his station responds, directs the manner in which the firefighting operation is conducted. While

---

**2.** The remaining three captains are employed on a forty-hour a week basis and presumably are not parties in this case.

**3.** While the testimony seems to indicate relatively smooth operation of the stations during shifts, with little need for ordering compliance with rules and regulations which are, as noted, relatively comprehensive, captains clearly have the supervisory authority to direct compliance and, while limited, authority to impose sanctions for failure to comply. Thus, the fact that the fire department "has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate" the conclusion that captains have supervisory duties since "[e]nsuring that company policies are carried out constitutes the 'very essence of supervisory work.'" *Donovan v. Burger King Corporation,* 672 F.2d 221, 226 (1st Cir.1982).

deputy chiefs are supposed to respond to all fires and, if they do so, would take command, these officers do not appear at every fire. In larger fires, when more than one company responds and the deputy chief or chief takes command, the captain is normally assigned a certain area, and "he directs the operation in that particular sector." While, in the chain of command, the captain is subject to the orders of the deputy chief in charge of the shift, these officers only occasionally visit the fire stations, and it is apparent from the testimony that captains are not closely supervised by their superiors.

A decision as to "whether an employee has management as his primary duty must be based on all the facts in a particular case," 29 C.F.R. § 541.103, and, in the context of the operation of a fire station, management is quite clearly the primary duty of the station captain. While the evidence does not, with any great precision, establish percentages of time spent in various tasks and functions and captains concededly perform considerable non-exempt work, "[t]ime alone ... is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if other pertinent factors support such a conclusion." *Id.* As has been expressed in various ways in a number of opinions in which the courts have been concerned with evaluating the primary duty of officers having responsibilities similar to those of the station captains in this case, the city has not employed these officers on the basis of their proficiency in waxing floors or cleaning gutters. In the sense of their most important or significant duty,[4] having charge of and ultimate responsibility for the efficient operation of a station house and the direction of their crews at fire scenes, clearly management functions, constitute the primary duties of station captains. The significance of manual or non-exempt work engaged in by these officers pales when compared with their responsibility for the readiness of men and equipment and the direction of firefighters at the scene of a fire.

The distinction between station captains and those under their command is given recognition not only in the responsibilities assigned the captain but also in "the relationship between his salary and the wages paid other employees for the kind of non-exempt work performed by the supervisor." 29 C.F.R. § 541.103.[5] Moreover, while station captains do perform many of the same chores as firemen under their command, while performing such work they are not thereby relieved of their obligation to supervise those employees nor is the fact of their command of the station house affected.

Plaintiffs argue that, even if captains have management as their primary duty, the station house is not a customarily recognized department or subdivision of the city or the fire department. In response, it can only be noted that fire stations are not made up of "a mere collection of men assigned from time to time to a specific job or series of jobs," but quite clearly constitute a "unit with permanent status and function." 29 C.F.R. § 541.104. Fire stations are, of course, physically separated and have specified areas within their purview. Though transfers are available, distinct groups of firefighters are assigned to each station and each station, as has been seen, is under the command of a station captain. In light of such circumstances, it cannot reasonably be argued that the six fire stations located in the City of Huntington lack the status of a "customarily recognized department or subdivision" and that has been the conclusion reached, explicitly or implicitly, in the FLSA cases involving fire departments in other jurisdictions.

■ With regard to the primary duty of a deputy chief, the officer to whom captains report in the chain of command, it need only be noted that this officer, who has overall charge of the six operating stations during a shift, does not wax floors

---

4.  *See, Donovan v. Burger King, Corporation,* 672 F.2d 221, 226 (1st Cir.1982).

5.  *See, Keller v. City of Columbus, Indiana,* 778 F.Supp. 1480, 1489 (S.D.Ind.1991).

or clean gutters, does not, to any significant degree, participate in non-exempt work, and has more significant responsibilities than station captains in the management of "the enterprise."[6] The question remains, however, whether these officers are compensated on a salary basis.

■ Little more need be said concerning the method of paying firemen, including deputy chiefs and captains, than has already been said in the Court's initial Findings of Fact and Conclusions of Law. As plaintiffs point out, and as is described in the Court's opinion, the City purportedly paid all firemen below the rank of chief on an hourly basis. Pay schedules set forth, *inter alia,* hourly rates of pay, and payroll records seemingly contemplated compensation of firemen on an hourly basis. If form were to take precedence over substance, it might be that the Court could, with relative ease, reach the conclusion that captains and deputy chiefs were paid on an hourly basis, excluding any possibility of an executive exemption. Were the Court to so elevate form, however, it too would be relying upon a "hypothetical retrospective construction of . . . a rate structure," *Brennan v. Valley Towing Co., Inc.,* 515 F.2d 100, 106 (9th Cir.1975), a course of action which is simply not sanctioned under the Act. Quoting from the Court's earlier opinion, in which it is made clear that firemen are not simply paid on an hourly basis, "[t]o arrive at the amount owed on a bi-weekly paycheck, the City simply divided a fireman's annual salary by twenty-six, the number of pay periods in a year." As was previously demonstrated, these equal bi-weekly checks were paid without regard to the fact that during the pay period the fireman worked varying hours, ranging from ninety-six hours to one hundred forty-four hours. Classically, and in substance, the City has been paying its firemen an annual salary for work performed on their regularly scheduled shifts, without regard to actual hours worked. It has only been hypothetically that firemen were treated as hourly employees. In fact, they received a salary, negotiated in each of their collective bargaining agreements, for all work performed on regularly scheduled shifts. There remains, however, the issue which arises as a consequence of the fact that firemen were paid for work beyond that performed during their regularly scheduled shifts, and payment for that work was computed on an hourly basis, albeit an incorrect one.

The regulations provide that "[a]n employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to . . . exceptions . . . the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked."[7] 29 C.F.R. § 541.118(a). In evaluating methods of paying firefighters claimed to qualify for the executive exemption, decisions of a number of courts, including a decision of a district court in this circuit,[8] have found significant the fact that, with regard to unscheduled work, the firefighters were compensated on an hourly basis. In interpreting the Act and the regulations, however, this Court does not

---

**6.** Thus, with regard to fires, the greater the conflagration the more likely it is that the deputy chief will take overall command.

**7.** Plaintiffs have not argued that deductions from "salary" for absences from work are a factor in this case.

**8.** In *Thomas v. County of Fairfax, Virginia,* 758 F.Supp. 353, 364–5 (E.D.Va.1991), the Court found receipt of "additional pay at an hourly rate for hours worked beyond their regularly scheduled time" was "inconsistent with salaried status," concluding that the "concept of 'overtime' pay" was "inherently inconsistent with the common-sense understanding of salaried executive status" and that "the measure of overtime pay by an hourly rate supports the inference that plaintiffs are hourly employees." It is noted, however, that the pay of the lieutenants in *Thomas,* unlike that of the deputy chiefs and captains, varied with each bi-weekly pay period depending upon the number of hours they actually worked.

write on a clean slate. In *Hartman v. Arlington County, Virginia*, 720 F.Supp. 1227, 1229 (E.D.Va.1989), *aff'd* 903 F.2d 290 (4th Cir.1990), the plaintiffs, "Fire Shift Commanders," were paid bi-weekly "without regard to the number of days or hours actually worked," as are the deputy chiefs and captains in this case, and received "additional pay at an hourly rate for each hour worked beyond their regular schedule," again, as do the deputy chiefs and captains in this case. Unlike the court in *Thomas*, the court in *Hartman* found this practice "expressly permitted by § 541.118(b)," [9] concluding that payment at an hourly rate for work beyond that regularly scheduled "does not defeat the executive exemption." *Id.*[10] On appeal, the Court of Appeals for the Fourth Circuit expressed its agreement "with the district court that the Fire Shift Commanders ... are exempt from the FLSA overtime requirements" and affirmed the grant of summary judgment in favor of Arlington County "on the reasoning of the lower court." *Hartman v. Arlington County, Virginia*, 903 F.2d 290, 292 (4th Cir.1990). Similarly, in *International Association of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Virginia*, 720 F.Supp. 1230, 1231 (E.D.Va. 1989), *aff'd* 912 F.2d 463 (4th Cir.1990), the court concluded that the receipt of "additional pay at an hourly rate for each hour worked beyond their regular schedule" would "not defeat the executive ... exemption" of engine company captains "because it is expressly permitted by the labor regulations," again citing 29 C.F.R. § 541.-118(b). Deputy chiefs and captains employed by the City of Huntington are paid an annual salary for regularly scheduled work. That their receipt of additional pay at an hourly rate for hours worked beyond their regular schedule does not defeat the executive exemption is established not only by the applicable regulations, but also by governing precedent in this Circuit. Having satisfied all the requirements of the "short test," it necessarily follows that the City is not liable to deputy chiefs and captains for overtime compensation under the Act.

■ There remains the question of whether lieutenants can qualify for the executive exemption. Defendant does not argue that lieutenants, when performing their usual work, are exempt under the Act. It is defendant's position, however, that, when serving in the capacity of company commander, lieutenants, in accordance with custom and the department's regulations, "exercise the authority and assume the responsibilities of the captain" and, accordingly, during these periods are exempt in the same fashion as the captains for whom they are standing in. While it is not entirely clear, it appears to be defendant's position that a lieutenant substituting for a captain on one shift, or on multiple shifts, qualifies for the executive exemption during such shift or shifts.[11] Under defendant's theory, the court would evaluate a lieutenant's duties, and his status as exempt or non-exempt, on a shift by shift, or perhaps weekly, basis. The difficulty with this theory is that, though the workweek standard[12] is generally utilized as a standard for measuring the obligation of employers under the FLSA, nothing contained in the "short test," 29 C.F.R. § 541.-1(f), the only test under which defendant seeks to qualify employees as exempt, authorizes the measurement of primary duty on the basis of a workweek standard. That this is so was made clear by the Court in *Marshall v. Western Union Telegraph Company*, 621 F.2d 1246 (3rd Cir.1980), a

---

**9.** § 541.118(b) states, in part:

It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment.

**10.** This view was also adopted by the Court in *York v. City of Wichita Falls, Texas*, 944 F.2d 236, 242 (5th Cir.1991).

**11.** His duties and responsibilities, being the same as a captain's, are then primarily management of a division of the fire department and, as the captain would, he customarily and regularly directs the work of two or more employees.

**12.** The Court is unaware of any authority which, even arguably, would support determining an employee's status on a shift by shift basis.

case in which it was also pointed out that application of the workweek standard in evaluating primary duty under the short test would require an amendment to the Secretary's regulations.[13] *Id.* at 1254. It is noted that changes have not been made in § 541.1(f) or other applicable regulations since the *Western Union* decision. Under such circumstances, the Court, taking a "holistic approach," *Id.* at 1252, in interpreting the phrase "primary duty," concludes that it is the usual or customary duties of an employee's job, rather than duties assumed on a sporadic or infrequent basis, which must be analyzed in determining whether his primary duty is management under the short test. In view of the fact that evidence before the Court indicates that a lieutenant's duties are not primarily management, and taking account of the requirement that exemptions are to be narrowly construed and of defendant's burden with regard thereto, the Court concludes that lieutenants are not exempt as executive employees from the overtime compensation requirements of the Act when performing their usual duties or when acting as a station commander in the absence of a captain.

In summary, deputy chiefs and captains, being executive employees within the meaning of the Act and the regulations, are not entitled to overtime compensation under the FLSA.[14] Lieutenants, on the other hand, are entitled to such compensation in accordance with the Court's Findings of Fact and Conclusions of Law entered following the first phase of this litigation.

---

**13.** As is apparent from the caption, the Secretary of Labor was a party in the *Marshall* case and was advocating utilization of the workweek standard in determining primary duty under the short test.

**14.** This holding does not, of course, address the question of defendant's obligation to its firefighters, including deputy chiefs and captains, under the collective bargaining agreement.