Charles ALY, Plaintiff,

v.

**BUTTS COUNTY, GA., et al., Defendants.**

**Civ. A. No. 92–470–1–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 11, 1994.

James Troy Chafin, III, McDonough, GA, for plaintiff.

Paul E. Hemmann, Jackson, GA, for defendants.

### ORDER

OWENS, District Judge.

Before the court is defendants' motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### FACTS

In 1985, in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the United States Supreme Court held that the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., concerning overtime wages, were generally applicable to public employers. *Garcia*, 469 U.S. at 530, 105 S.Ct. at 1007. In response to the Court's decision in *Garcia*, Butts County consolidated its emergency medical services and fire department, and appointed plaintiff Charles Aly Director of Emergency Services. The purpose of the consolidation was to allow Butts County to take advantage of FLSA exemptions that permitted certain employees to work additional hours before the overtime compensation requirements of the FLSA became applicable. In 1989, Butts County conducted a study to determine if plaintiff was qualified for an overtime exemption available for employees in "executive" capacities. After conducting the study, Butts County informed plaintiff that he was exempt from the overtime requirements of the FLSA.

As Director of Emergency Services, plaintiff had managerial responsibility over both the emergency medical services and the fire department. As Director, plaintiff coordinated the city fire departments, trained the local fire departments in the operation of certain equipment, directed activities at fire scenes, oversaw the activities of the county fire chief, prepared a five and ten year fire plan for the county, purchased emergency medical supplies, ensured that EMS qualified as an advance life support unit, interviewed candidates for employment, made hiring recommendations to the county commission, disciplined employees, evaluated employees, prepared a policy and procedure manual that governed the EMS department, developed goals and objectives for the EMS department, and proposed a annual budget to the commission. In addition to his duties as Director, plaintiff also worked regular 24 hour shifts as an Emergency Medical Technician ("EMT") from 1985 until July of 1991. In July of 1991, plaintiff quit working a regular 24 hour shift and only worked shift work when it was necessary to fill in for absent EMTs. During this period, however, plaintiff continued to work in his position as Director of Emergency Services. In August, 1992, plaintiff resigned from his employment with Butts County over a dispute concerning the limits of his authority as Director.

On December 14, 1992, plaintiff filed suit against Butts County, and the Butts County Commissioners, contending that Butts County had failed to pay plaintiff overtime wages as required by the FLSA.

### DISCUSSION

Defendants filed a motion for summary judgment contending that to the extent applicable, plaintiff's claims are barred by the two-year statute of limitations contained in 29 U.S.C. § 255(a). Further, defendants assert that plaintiff properly qualified for the executive exemption contained in 29 U.S.C. § 213(a) and, therefore, was not subject to the overtime compensation requirements of the FLSA.

#### I. Statute of Limitations

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid ... overtime compensation ... under the Fair Labor Standards Act ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a wilful violation may be commenced within three years after the cause of action accrued[.]

29 U.S.C. § 255(a). The proper application of § 255(a)'s period of limitation requires the court to address three issues:

(1) When did plaintiff's cause of action accrue?

(2) Is the two or three year period of limitation applicable?

(3) Has the statute of limitations been equitably tolled?

## A. Accrual

■ The general rule is that a claim for unpaid overtime wages under the FLSA accrues at the end of each pay period when it is not paid. *See Cook v. United States*, 855 F.2d 848, 851 (Fed.Cir.1988); *Udvari v. United States*, 28 Fed.Cl. 137, 139 (1993); *Mitchell v. Lancaster Milk Co.*, 185 F.Supp. 66, 70 (M.D.Penn.1960) ("It is well settled that 'A separate cause of action for overtime compensation accrues at each regular payday ... for which the overtime compensation is claimed'"). Therefore, on every payday in the post–*Garcia* period of plaintiff's employment that plaintiff contends overtime compensation was due, a separate cause of action under the FLSA arose.

## B. Two or three year period of limitation?

■ In the absence of a wilful violation of the FLSA, a two-year period of limitation will apply to all actions for unpaid overtime compensation under the FLSA. *See* 29 U.S.C. § 255(a). The standard for determining if a violation is wilful is " 'if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.' " *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 135, 108 S.Ct. 1677, 1680, 1682, 100 L.Ed.2d 115 (1988); *see also Cook*, 855 F.2d at 850; *Duncan v. Brockway Standard, Inc.*, 1 Wage & Hour Cas. (BNA) 485, 1992 WL 510256 (N.D.Ga.1992); *Spires v. Ben Hill County*, 745 F.Supp. 690, 704 (M.D.Ga.1990); *Nerseth v. United States*, 17 Cl.Ct. 660, 666 (1989). The burden is on a plaintiff to establish that an employer's conduct was wilful. *McLaughlin*, 486 U.S. at 135, 108 S.Ct. at 1682; *Spires*, 745 F.Supp. at 704. "The showing needed for a finding of willful is demanding in that even if an employer acted unreasonably, *if the employer's action was not reckless* in determining its legal obligations under the FLSA, such action is not 'willful.' " *Duncan*, 1 Wage & Hour Cas. (BNA) at 485 (emphasis added); *see also Spires*, 745 F.Supp. at 704.

It is plaintiff's burden, therefore, to put forth some evidence that defendants acted recklessly in determining the applicability of the Act to plaintiff. Plaintiff contends that defendants acted recklessly based on the following facts:

(1) Defendants consolidated the emergency medical services and fire department to take advantage of FLSA exemptions.

(2) Defendants had a FLSA compliance manual.

(3) Defendants had legal counsel.

(4) Defendants told plaintiff not to allow employees in his department to work overtime.

Contrary to plaintiff's assertions, however, the above facts indicate that not only were defendants aware of their obligations under the FLSA, they actually took positive steps to comply with FLSA requirements in the period following the *Garcia* decision. The fact that defendants conducted a study prior to their determination that plaintiff was subject to the executive exemption only highlights these efforts at compliance. Recklessness on the part of an employer cannot be proven only by showing that the employer has attempted to limit its obligations to pay overtime compensation by compliance with exemption provisions of the FLSA. Plaintiff has failed to meet his burden of establishing that the three-year period of limitation is applicable. Accordingly, on its face, the two-year period of limitation provided in § 255(a) appears to prevent plaintiff from asserting any claim for overtime wages that arose prior to December 14, 1990.

## C. Equitable tolling

■ Whether to equitably toll a limitations period "is determined on a case-by-case basis, depending on the equities of the situation." *McClinton v. Alabama By–Products Corp.*, 743 F.2d 1483, 1485 (11th Cir.1984).

However, as a general rule, "[t]he policy considerations underlying statutes of limitations mandate that exceptions to them should rarely be created by courts." *Udvari*, 28 Fed.Cl. at 140. Plaintiff contends that the two-year statute of limitations should be equitably tolled because defendants allegedly misrepresented to plaintiff his exemption status under the FLSA. To equitably toll a statute of limitations based on an alleged misrepresentation, a plaintiff must show that the defendant made a misrepresentation for the purpose of inducing the plaintiff to delay filing suit and that the plaintiff actually and reasonably relied on the misrepresentation. *Griffin v. Leaseway Deliveries, Inc.*, 1990 WL 136349, at *2–3, 1990 U.S.Dist. LEXIS 12389, at *6 (Sept. 7, 1990, E.D.Penn.); *see also Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982). As these cases indicate, a statute of limitations is not equitably tolled every time an incorrect statement is made. Only when the statement is made for the purpose of preventing or delaying an employee from filing suit is equitable tolling available. There is no indication in the record that defendants acted with the intent to prevent or delay plaintiff from filing suit for overtime compensation. Any conclusion that defendants did act for this purpose would be drawn solely from inferences arising from the fact that the statement was made to plaintiff, and nothing more. If this conclusion were permissible, any requirement that a defendant act with the purpose of causing a plaintiff to delay suit would be superfluous. Accordingly, the two-year period of limitation applicable to plaintiff's cause of action is not equitably tolled.[1] Defendants' motion for summary judgment on the issue that all of plaintiff's claims arising prior to December 14, 1990, are barred by the statute of limitations, is **GRANTED.**

## II. Executive Exemption

■ "The provisions of section 206 ... and section 207 of this title shall not apply with respect to ... any employee employed in a bona fide executive ... capacity ..." 29 U.S.C. § 213(a)(1). Defendants maintain that plaintiff was ineligible for overtime compensation for the period between December 14, 1990, until August 3, 1992, because plaintiff qualified for the executive exemption set forth in the FLSA. The Department of Labor has promulgated several regulations designed to facilitate the determination of whether an employee is qualified for the executive exemption. *See* 29 C.F.R. §§ 541.0–541.119 (1993). 29 C.F.R. § 541.1 provides:

> The term *employee employed in a bona fide executive * * * capacity* in section 13(a)(1) of the Act shall mean any employee ... who is compensated on a salary basis of not less than $250 per week ... and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein. ...

---

**1.** Plaintiff cites the decision in *Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324 (E.D.Penn.1984), for the proposition that an employer's failure to post statutorily required notices concerning overtime wages equitably tolls the statute of limitations. This cite to the decision in *Kamens* precedes plaintiff's reference to the deposition of County Manager Tom Williams, in which Mr. Williams testified that he first posted notices shortly after beginning work with Butts County in March of 1991. Plaintiff, however, never explicitly asserts that the required notices were not posted prior to March 1991. Further, as pointed out in defendants' reply brief, another employee of Butts County, Doug Hogan, did testify that the required notices were posted during the period Mr. Hogan was employed with Butts County, from approximately April 1987, until April 1993. Accordingly, the statute of limitations will not be tolled on the basis that the required notices were not posted.

Moreover, assuming that the required notices were not posted, the applicable statute of limitations would be tolled only for a minimal period of time, if at all. Failure to post required notice will equitably toll a limitations period, but only until such time as a plaintiff "acquires general knowledge of his right[s] ... or the means of obtaining such knowledge." *McClinton*, 743 F.2d at 1486. As director of emergency services, plaintiff regularly received information regarding the FLSA. Further, plaintiff was well aware that the basis for his not receiving overtime pay was an exemption contained in the FLSA. As the facts indicate, plaintiff had sufficient "general knowledge" of his rights under the FLSA to severely limit, if not completely abrogate, the applicability of the doctrine set forth in *Kamens*.

*Id.* § 541.1(f); *see also York v. City of Wichita Falls,* 944 F.2d 236, 241–42 (5th Cir.1991). Plaintiff does not contest defendants' assertion that plaintiff had supervision over the work of two or more employees within plaintiff's department. Plaintiff, however, contends (1) that he was not compensated on a salary basis, and (2) that his primary duty was not management.

*A. Compensated on salary basis*

Plaintiff contends that he was not compensated on a salary basis, as the term is defined by the regulations, because in addition to his regular bi-weekly pay check, he received additional compensation on an hourly basis for time spent working as an EMT. Plaintiff does not contend, however, that his regular bi-weekly compensation, less any additional hourly compensation, was less than $250 per week. Further, the bi-weekly compensation plaintiff received, less any additional hourly compensation, was predetermined and did not vary according to either the quantity or the quality of the work plaintiff performed. The sole issue, therefore, is whether the additional hours plaintiff worked as an EMT deprived plaintiff of "salaried" status under 29 C.F.R. § 541.1(f).

> Under the Labor Department regulations, [a]n employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.118(a). Plaintiff asserts that because the amount of his bi-weekly pay check would vary depending on the number of hours he worked as an EMT, plaintiff's pay was subject "to reduction because of variations in the ... quantity of work performed." *Id.* Section 541.118(b), however, provides: "[S]alary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary

basis of payment." *Id.* § 541.118(b). Further, in *York v. City of Wichita Falls,* 944 F.2d 236 (5th Cir.1991), the Fifth Circuit concluded: "Paying an hourly rate for each hour worked beyond the regular schedule does not defeat the executive exemption." *York,* 944 F.2d at 241; *see also Hartman v. Arlington County,* 720 F.Supp. 1227, 1229 (E.D.Va.1989).

To accept plaintiff's argument concerning his status as non-salaried under the regulations, the base line of plaintiff's compensation would have to be the highest bi-weekly pay check plaintiff received, which would include the additional hourly compensation. Under that view of the facts, plaintiff's compensation would indeed be "subject to reduction because of variations in ... quantity of the work performed." 29 C.F.R. § 541.118. That is, plaintiff's compensation would vary with the number of additional hours he worked. However, this contention effectively ignores the plain language of § 541.118. Section 541.118(b) clearly states that in order to constitute "salary," compensation paid an employee must include *at a minimum* a predetermined amount that the employee receives on a regular basis irrespective of quantity or quality of work performed. Any pay the employee receives in addition to the regular compensation does not prevent the employee from having been paid on a salary basis for purposes of § 541.118. The decisions in *York* and *Hartman* support this proposition. In the case *sub judice,* plaintiff was paid a regular, predetermined salary, that was not subject to variation because of the quantity of work plaintiff performed. This compensation clearly falls within § 541.-118's definition of "salary." As discussed above, any additional hourly compensation plaintiff may have been paid does not change the status of plaintiff as a salaried employee. Accordingly, the court holds that plaintiff was compensated on a salary basis at a rate of not less than $250 per week.

*B. Management duties*

29 C.F.R. § 541.103 provides:

> A determination of whether an employee has management as his primary duty must be based on all the facts in a particular

case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if other pertinent factors support such a conclusion.

*Id.* § 541.103. 29 C.F.R. § 541.102 sets forth a detailed list of the various activities identified as "management duties."[2] Defendants contend that for the period from July, 1991, until August, 1992, plaintiff satisfied the primary duty test set forth in § 541.103 by spending over fifty percent of his time involved in management duties. Further, defendants assert that although there is no clear breakdown of the time spent in management and non-management duties for the period from December 14, 1990, until June 30, 1991, other pertinent factors support the conclusion that plaintiff's primary duty was management.

### A. July, 1991, until August, 1992

Defendants contend that for the period from July, 1991, until August, 1992, plaintiff spent over fifty percent of his time in management activities, and, therefore, his primary duty was management. Plaintiff does not contest defendants' computation of plaintiff's time during this period. Plaintiff, however, insists that unless *all* of his time is spent performing managerial duties, the ex-

ecutive exemption is not available. The regulations do not support this view of the executive exemption. The regulations specifically anticipate that some of an employee's duties may be non-managerial. *See id.* § 541.103. Plaintiff's duties during this period were clearly managerial in nature and comprised more than fifty percent of his time. Accordingly, plaintiff's primary duty as Director of Emergency Services for the period from July, 1991, until August, 1992, was management.

### B. December 14, 1990, until June 30, 1991

As the facts indicate, during the period from December 14, 1990, until June 30, 1991, plaintiff worked a regular shift as an EMT in addition to his duties as Director. In his deposition, plaintiff was unable to estimate the exact amount of time he spent in management and non-management duties. "Time alone, however, is not the sole test...." *Id.* § 541.103. Clearly, plaintiff performed significant managerial duties in his position as Director. In order to find that plaintiff's primary duty during this period was not management, it would be necessary to conclude that the importance of his duties as an EMT outweighed the importance of his duties as Director. The facts simply do not support this conclusion. Plaintiff's responsibilities as director transcended significantly his obligations as an EMT. A similar situation was addressed by the District Court in *Masters v. City of Huntington,* 800 F.Supp. 363 (S.D.W.Va.1992). In finding that the primary duty of the captains of the municipal fire departments was management, the court stated: "The significance of manual or non-exempt work engaged in by these officers pales when compared with their responsibility for the readiness of men and

---

2. Section 541.102(b) provides:

[I]t is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102(b).

equipment and the direction of firefighters at the scene of a fire." *Masters,* 800 F.Supp. at 366. Further, in *Keller v. City of Columbus,* 778 F.Supp. 1480 (S.D.Ind.1991), the court, in concluding that the primary duty of the captains and lieutenants of the city fire department was management, wrote: "They are ranked and paid as officers precisely because of their managerial skills and position of responsibility." *Keller,* 778 F.Supp. at 1489. The same holds true for plaintiff. Plaintiff's position as Director of Emergency Services brought with it significant responsibilities that were reflected in his job title, job requirements, and salary. Accordingly, plaintiff's primary duty as Director of Emergency Service for the period from December 14, 1990, until June 30, 1991, was management.

Plaintiff has satisfied the requirements for the executive exemption as forth in 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 451.1(f). First, plaintiff was compensated on a salary basis at a rate of not less than $250 per week. Second, plaintiff supervised the work of two or more employees. And finally, plaintiff's primary duty was management. Defendants' motion for summary judgment on the issue that plaintiff was exempt from the overtime pay requirements of 29 U.S.C. § 207, is **GRANTED.**

### CONCLUSION

Defendants' motion for summary judgment on the issue that all of plaintiff's claims arising prior to December 14, 1990, are barred by the statute of limitations, is **GRANTED.** Further, defendants' motion for summary judgment on the issue that plaintiff was exempt from the overtime pay requirements of 29 U.S.C. § 207, is **GRANTED.**

**SO ORDERED.**